## Green vs. The State.

On a change of venue in a criminal case, after verdict against the prisoner, he moved in arrest of judgment, because the transcript of the record transmitted to the court where the trial was had, did not show the empanneling of the grand jury by whom the indictment was found: the court suspended judgment, and ordered a *certiorari* for a transcript of the record, showing the empanneling of the grand jury, and upon return of the writ, with the transcript, overruled the motion in arrest, and pronounced sentence in accordance with the verdict: *Held,* that the motion in arrest of judgment was properly overruled.

Although the person against whom an indictment is returned be not in custody or on bail, there must be some memorial made of the presenting of the indictment by the grand jury in court, such as noting the fact of such return, and its date upon the indictment, etc.: and if the transcript of the record, on appeal, or error, contains no showing that the indictment was returned into Court by the grand jury, the judgment will be reversed.

Where an indictment was returned into Court by the grand jury, but the record fails to show the fact, the record may be amended by a *nunc pro tunc* entry; but in such case, the accused must be present in Court, when the amendment is made.

*Appeal from the Circuit Court of Jefferson county.*

The Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL for the appellant.

The Court proceeded to try the defendant upon a pretended transcript, that did not show with sufficient certainty in what court the proceedings were had, and after the prisoner had been tried, and verdict rendered, ordered a writ of certiorari to the clerk of the Circuit Court of the county, from which the trial had been moved by change of venue, to supply omissions in the transcript. The record upon which the prisoner was tried, did not show, at the time of trial, that any grand jury had been legally selected, charged and sworn, at the term when the indictment was preferred.

In this case, there is no record of the presentment or finding, therefore no valid indictment. Where the record does not show that the grand jury did return the indictment into court, the whole proceedings of the Court thereon are a nullity. *Wharton's Cr. L.* 237; *Rainey vs. The State,* 3 *Gill.* 71; *Cone vs. Carwood,* 2 *Virg. Cas.* 527; *Chappel vs. The State,* 8 *Yerg.* 166; *Henry vs. State,* 4 *Humph.* 270; *Brown vs. State,* 7 *Humph.* 155.

Mr. Attorney General Johnson for the State.

Mr. Chief Justice English delivered the opinion of the Court.

At the May term of the Jefferson Circuit Court, 1857, Elihu D. Green was tried upon an indictment for the murder of Francis M. Whitesides, on a change of venue from Bradley; convicted of murder in the second degree, and sentenced to the penitentiary for fifteen years. He filed a motion in arrest of judgment, which was overruled, and he appealed to this court.

1. The first ground for the motion in arrest of judgment is, that the transcript of the record sent from the Bradley to the Jefferson Circuit Court, on the change of venue, did not show that the indictment, upon which the defendant was tried, was found by a legally organized jury. In other words, that the record entry, or caption, as it is usually called, showing the empanneling of the grand jury for Bradley county, at the Septem-term, 1856, the term at which the indictment purports on its face to have been found, was not contained in the transcript.

The defendant having been arraigned and pleaded not guilty to the indictment, in the Bradley Circuit Court, before the change of venue, as appears from the transcript, he went into the trial in the Jefferson Circuit Court without making any objections to the transcript, or to the regularity of the previous proceedings. The objection for want of the *caption* entry, seems to have been made for the first time after verdict, and in arrest of judgment.

After the verdict was rendered, and before the motion in arrest of judgment was overruled, or the final judgment given, the Court, on motion of the attorney prosecuting for the State,

ordered a special *certiorari* to be issued to the Clerk of the Bradley Circuit Court, for a transcript of the record entry showing the empanneling of the grand jury, etc.; and after the *certiorari* was returned with the transcript, the court then proceeded to overrule the motion in arrest of judgment, and to pronounce the final sentence upon the prisoner, in accordance with the verdict.

The transcript returned with the *certiorari* is as follows:

MONDAY, Sept. 15th, 1856.

STATE OF ARKANSAS,}
  COUNTY OF BRADLEY,    }

At a Circuit Court begun and held in the court-house, in the town of Warren, county and State aforesaid, on the 3rd Monday in September, it being the 15th day of said month, the following orders among others were had—present the Hon. T. F. SORRELLS Judge.

GRAND JURY, Sept. 15th, 1857.

Anthony B. Coward, Sheriff of Bradley county, returned the venire facias for grand —— of said county on all the persons therein named, namely:

[*Here follow the names, being sixteen in number.*]

All of whom appeared except William Cummins, W. C. Parker, and Wm. Green, who were excused from serving as such grand jurors, on the evidence adduced to the court; and on the statement of T. A. Coaker, under oath, he is also excused—whereupon the Court ordered that four other good and lawful men should be summoned to serve as grand jurors during the present term of this Court. And the following named persons were duly sworn and empanneled to serve the present term of the Court, namely: James Thomson, foreman, Beverly Graves, etc., etc. [*Then follow the other names, sixteen in all.*] The said James Thomson as foreman, and the others, as the other members, received the charge of the Court, and retired to consider the duties of their station."

STATE OF ARKANSAS,}
  COUNTY OF BRADLEY.    }

I, Alvin Bartlett, Clerk of the Circuit Court for the county

aforesaid, do hereby certify that the foregoing is a true copy of the original order made in the Bradley Circuit Court, on the 15th day of Sept. 1856.

In testimony whereof, I hereto set my hand and affix the seal [L. S.] of my office, at Warren, this May 5th, 1857.

ALVIN BARTLETT, <em>Clerk</em>."

The certiorari was issued May 4th, and returned May 7th, 1857.

The counsel for the prisoner objects that this entry shows the empanneling of the grand jury at the September term 1857, and not at the September term, 1856. There is nothing in this objection. The date of the entry, and the certificate of the clerk show the term at which the entry was made. The date of the heading of the second paragraph—" Grand Jury, Sept. 15th, 1857 "—is clearly a misprision of the clerk. The September term 1857, had not arrived when the certiorari was issued, nor has it yet arrived.

The entry, though not skilfully made, substantially shows the empanneling of the grand jury, at the term when the indictment purports on its face to have been found, according to law.

When the Court below, therefore overruled the motion in arrest of judgment, and pronounced the final sentence of the law against the prisoner, the first ground upon which the motion in arrest was based, had been removed. The omission in the transcript had been supplied by a legal process, and the Court had before it, when it decided the motion in arrest, evidence as legally competent to show the empanneling of the grand jury, as if it had been sitting in Bradley county, with the original record open before it, determining the motion in arrest of judgment there.

The counsel for the prisoner insists, however, that it is not regular for the Court to supply an omission in the transcript after the trial and verdict. This may be true as to some matters, but it is not true as to every matter, according to the previous decisions of this Court, as we shall presently see.

Motions in arrest of judgment may be defeated by an amend-

ment of the record in any matter that is legally amendable. For example, if the defendant had been tried and convicted in the Bradley Circuit Court, and moved in arrest of judgment on the ground that the record did not show that any grand jury was empanneled at the term at which the indictment purports to have been found; and if in point of fact a grand jury had been duly empanneled, it would be perfectly competent for the Court to supply the omission in the record, by a *nunc pro tunc* entry, and then to overrule the motion in arrest of judgment. See *State vs. Clark*, 18 *Mo. R.* 432. The case put by way of illustration is fully as strong as the one before us. A grand jury had, in point of fact, been organized in the Bradley Circuit Court, and the evidence of that fact was upon the record there, but a transcript of the entry was not before the Jefferson Circuit Court where the motion in arrest of judgment was made. But the Court, by the legal mode, supplied the omission, and then overruled the motion.

It is true that if the Jefferson Circuit Court could not legally proceed to try the prisoner without the presence of a transcript of the record entry, showing the empanneling of the grand jury in the Bradley Circuit Court, the illegality of the trial could not be removed by supplying the omission after verdict. But was the presence of the transcript of such entry an essential prerequisite to the power of the Court to proceed with the trial? This Court has in effect heretofore decided, in two cases, that it was not. See *Stewart vs. The State*, 13 *Ark.* 475. *Bixby vs. The State*, 15 *Ark.* 395.

And the Court below acted strictly in conformity with these decisions in supplying the omission after verdict.

By the order of the Court directing the change of venue, the jurisdiction of the cause was transferred from the Bradley to the Jefferson Circuit Court; and it was the duty of the clerk of the former Court to make out, certify and transmit to the clerk of the latter Court, a full transcript of the record and proceedings in the cause. When the Jefferson Circuit Court afterwards met, if the transcript had not been there, or if it had been deficient

in any matter essential to the trial, it would have been the duty, and within the power of the Court, having obtained jurisdiction by the order of removal, to proceed by mandamus to compel the clerk of Bradley Circuit Court to make out and transmit the transcript if not done, or by *certiorari* to perfect the transcript, if an imperfect one had been sent.    *State vs. Hicklin*, 5 *Ark*. 190; *Fortenberry vs. Frazier et al.*, *Ib*. 200; *Stone vs. Robinson*, 4 *Eng*. 469; *Stringer vs. Jacobs et al.*, *Ib* 497; *Ryburn vs. Pryor*, 5 *Eng*. *R*. 417; *Stewart vs. State*, 13 *Ib*. 745.

The record entry showing the empanneling of the grand jury does not constitute part of the record in any particular cause. It is an independent entry—but on appeal or writ of error in any criminal case, it is the practice in this State to include such entry in the transcript made out for the Supreme Court; and in cases where the entry has been omitted, this Court has refused to affirm the judgment, especially in prosecutions involving life or liberty, until it has sent down a certiorari for a transcript of the entry.  This has been done because the accused could not be tried except upon an indictment found by a grand jury; and as a precautionary measure, in order to see that the accused was, in no case, deprived of a constitutional right, the Court would not affirm a judgment against him until it had ascertained that the indictment upon which he was tried had been found by a grand jury.    *Stewart vs. State*, 13 *Ark*. 744; *Straughn vs. State*, 16 *Ib*. 44; *Beverly Brown vs. State*, 7 *Eng*. *R*. 624; *Cornelius vs. State*, *Ib*. 782.

No doubt, also, in changes of venue the proper practice is to include this entry in the transcript.   But how were the rights of the prisoner prejudiced by its not having been done in this case before the trial?   He had been arraigned and pleaded not guilty to the indictment in the Bradley Circuit Court, by which he had waived objections to the qualifications of the grand jurors, etc.  *Stewart vs. State, ubi sup.   Fenalty vs. State*, 7 *Eng*. *R*. 630. *Straughn vs. The State, ubi sup*.   The matter to be tried by the jury in the Jefferson Circuit Court, was, whether or not the prisoner was guilty of the crime charged in the indictment.   A

copy of the indictment was embraced in the transcript, as well as a copy of the record entry showing his arraignment and plea—upon the trial it was not necessary to read any other portions of the transcript to the jury.   If the transcript had embraced a copy of the record entry showing the empanneling of the grand jury, for what purpose could it have been read to the jury?   What had they to do with it?   It was in no way material to the issue to be tried by them.

After the jury had determined the issue of fact submitted to them, the prisoner, in his motion to arrest the judgment, submitted a question to the Court to be determined by the record.   That question was, whether a grand jury had been, in point of fact, duly empanneled at the term of the Court at which the indictment, upon which he had been tried, purported on its face to have been found.   The Court, through a careful regard to a constitutional right, did not treat this question as having been waived by the plea to the indictment, but suspended its judgment, as above stated, until the record evidence of the empanneling of the grand jury was legally obtained, and then overruled the motion in arrest.   In this we think the Court committed no error, but acted strictly in accordance with the decisions of this Court.

2. The second ground of the motion in arrest of judgment is that the transcript does not show that the indictment was returned into Court by the grand jury.

It is true that there is no record entry copied in the transcript showing that the grand jury did return the indictment into Court. Nor is there any note by the Clerk upon the back of the indictment of its having been returned into Court, and filed, as it appears in the transcript.

The special *certiorari* issued to the clerk of Bradley Circuit Court above referred to commanded him also to return a transcript of the record of the presentment and filing of the indictment, etc.   But the return to the writ contains nothing but the *caption* entry above copied, and a bill of costs.

In a detached certificate the clerk states that it appears from

the minutes of the Court that on the 15th September, 1856, the foreman, in the presence of the grand jury, presented the indictment in Court, and it was ordered to be filed, which was accordingly done.    This statement of the clerk, of course, amounts to nothing.    If there was any *record* of the fact, he should have sent a certified transcript of that, as commanded by the writ of *certiorari.*

There is nothing in the transcript before us, showing that the grand jury returned any bill into Court during the term, or that they were in Court for any purpose whatever after they were empanneled.

Though the requisite number of grand jurors consent to the indictment, and the foreman endorse it " *a true bill*," it has no legal validity until it is returned into open Court by the grand jury.

The statute declares that: " All indictments found, and presentments made, by a grand jury, shall be presented to the Court by the foreman, in the presence of such jury, and shall be there filed and remain as records of the Court."    *Dig. chap.* 52, *sec.* 85.

This statute introduces no new rule.    It is but declaratory of the common law practice.    1 *Chitty's Crim. L.* 325.    *Wharton Cr. L.* 181.

But *sec.* 86 of the same chapter of the Digest declares that, " No entry of an indictment found shall be made on the minutes of the Court, at the term at which the same is found, unless the person indicted shall be in actual confinement, or shall have entered into a recognizance to answer such indictment."

The object of this section is manifest.    If an entry of the finding of an indictment against a person not in custody, or on bail, were made upon the records of the Court, which are open to the inspection of the public, the accused might be informed of the fact, before his arrest, and make his escape.

If the accused is in confinement or on bail, it of course would then be proper, and in accordance with the common law prac-

12

tice to note upon the record the return of the indictment into Court, by the grand jury, as a memorial of the fact.

If the indictment in this case was returned into Court by the grand jury at all, it is probable that the defendant was in custody at the time, because the transcript shows that on the first day of the term he was ordered to be brought into Court from the county jail, etc.

But if the accused be not in custody or on bail, is no memorial to be made of the presenting of the indictment by the grand jury in court? Most assuredly there should be. The clerk should note the fact of such return, and its date, upon the indictment, and such endorsement, as well as the indictment, would thereby become matter of record in the cause. He might also, without any violation of the intention of the statute, make a record entry of the return of the indictment into Court, by the grand jury, identifying it by its number, but not disclosing the name of the accused. Such perhaps is the usual practice.

In the case of *Shropshire vs. The State*, 7 *Eng. R.* 193, the objection was made on error, that the record did not show that the particular indictment in that case was returned into Court, and ordered to be filed; and the Court held that this was not necessary under our statute.

In that case the record entry showed that on the 6th of May the grand jury returned into Court *various bills of indictment*, and the indictment against Shropshire was endorsed *filed* by the clerk on the same day.

All that the Court decided in that case was that, under our statute, it was not necessary to note of record the return into Court of the particular indictment. But it did not decide that it need not appear, in any manner, upon the face of the transcript, that the indictment was returned into Court by the grand jury. There the record entry taken in connection with the endorsement upon the indictment, showed its return into Court with sufficient certainty. Here there is neither a record entry nor an endorsement upon the indictment to show that the grand

jury returned this, or any other indictment into Court during the term. We are left to presume a fact requisite to the legal validity of the indictment. Is it safe to indulge in such presumptions in a case involving the liberty of the accused, like this?

By the common law practice, when the grand jury have agreed upon a bill, and endorsed it, they bring it publicly into Court, and the clerk of the Court calls the jurymen by name, who severally answer to signify that they are present; and then the clerk asks the jury whether they have agreed upon any bills, and bids them present them to the Court; and then the foreman of the jury hands the indictment to the clerk, etc. The finding should then be recorded by the clerk, and an omission in that respect cannot be supplied by the endorsement of the foreman, nor by the recital in the record that the defendant stands indicted, nor by his arraignment, nor by his plea of not guilty. It cannot be intended that he was indicted; it must be shown by the record of the finding. The recording of the finding of the grand jury, it is said, is as assential as the recording of the verdict of the petit jury. *Whart. Cr. Law* 181.

In *Chappel vs. The State*, 8 *Yerger* 170, *Catron Ch. J.*, said: " The Court is of opinion that this practice is in accordance with the safety of the citizen, and that no less evidence than record evidence can be received to establish the fact that the accused has been indicted in due form by the grand jury, the returning of the bill into Court being a judicial act. No evidence existing that the present bill of indictment was found by the grand jury, the defendant could not be legally tried upon it, nor can he be punished, more than if the indictment had been found a true bill, and merely filed by the solicitor." The Supreme Court of Tennessee adhered to this opinion in *Blevins vs. The State, Meigs Rep.* 82. *Henry vs. The State*, 4 *Hump.* 270; *Brown vs. The State*, 7 *Hump.* 155, though the Court said in *Blevins vs. The State* that *Chappel vs. The State* went to the *verge of the law*.

In the case of *Rainey vs. The People*, 3 *Gilman* 71, the priso-

ner was indicted in one county, the venue was changed to another, and he was tried on the plea of not guilty, convicted, and brought error. The transcript did not show that the indictment was returned into Court by the grand jury, and this was assigned for error, and the Supreme Court said:—" On this point there can be no doubt. There is nothing in the record to sustain the conviction. The only mode of preferring an indictment is through the medium of a grand jury. It is the imperative duty of the grand jury to make this presentment in open Court. The indictment is the foundation of all subsequent proceedings in the cause; and to uphold them the record ought to show *affirmatively* the returning of the indictment into Court, by the grand jury. This is a necessary part of the record, and can no more be dispensed with than the verdict of the jury or the judgment of the Court." The cause was reversed, and remanded, with directions to supply the defect in the record if it occurred from a clerical omission. See also *Gardner vs. The People*, 3 *Scam.* 83. *McKinney vs. The People*, 2 *Gilman*, 540. *Commonwealth vs. Cawood*, 2 *Virg. Cases* 527.

In *Holton vs. The State*, 2 *Florida* 482, the Court said: " No one can dispute these propositions: 1. No man can be legally convicted until he is legally accused. 2. He can be legally accused of murder only by indictment. 3. He cannot be indicted, except by the decision of twelve grand jurors against him. 4. That decision can only be known to the Court, and the prisoner, and the world, by the *record*, showing their assent to the fact in open Court, when called expressly for that purpose."

In this case the prisoner having been arraigned and pleaded to the indictment, and procured the venue to be changed to Jefferson Circuit Court where clerical omissions in the records of the Bradley Circuit Court cannot be supplied without great inconvenience, we would not reverse the judgment of the Court below on the ground in question, if there was any competent legal evidence in the transcript, either by an entry of record or an endorsement upon the indictment, that the grand jury

had returned the indictment into Court. But there is no such evidence; and the course of decisions of this Court does not warrant the indulgence of presumptions against the prisoner, in cases involving life or liberty, in reference to matters vital to the regularity of the prosecution; and it is safest, in all cases, to adhere to the land-marks of the law.

In our country, where there is no political or religious persecution to interfere with the impartial administration of the criminal law, an adherence to technical rules may, in some cases, seem to produce inconvenience, rather than subserve the substantial purposes of justice. But we know not what storms and revolutions the future may produce, and the time may come, even in our own country, when the wisdom of adhering to these long established rules will be manifest.

The judgment of the Court below must be reversed because there is no showing in the transcript before us that the indictment was returned into Court by the grand jury. Other grounds were assigned in the motion in arrest, but they are unsubstantial. The cause must be remanded to the Jefferson Circuit Court, with instructions to arrest the judgment, and grant the prisoner a new trial, if the record can be perfected. But it must await the action of the Bradley Circuit Court. If the grand jury did in point of fact return the indictment into Court, as required by law, the Bradley Circuit Court may, by a *nunc pro tunc* entry, make its record show that fact, and then cause the clerk to make out and transmit to the Jefferson Circuit Court a transcript of the record as amended; when the prisoner may be tried again. But if the Bradley Circuit Court shall determine that the indictment was not in point of fact returned into Court by the grand jury, it may treat the order changing the venue to Jefferson, and the proceedings thereon, as null and void, and the prisoner will be subject to indictment *de novo*, and may be held in custody for that purpose.

But the prisoner must have the opportunity to be present in the Bradley Circuit Court when that Court acts upon the matter of amending the record. If the amendment is made, and

certified to the Jefferson Circuit Court, he must be again sent there for trial. If the amendment is not made, the prisoner must be disposed of as above indicated.

For the purpose of affording the prisoner an opportunity of being present in the Bradley Circuit Court when any steps may be taken there in relation to the amendment of the record, an order must be made for the sheriff of Pulaski county to take the prisoner from the penitentiary, and convey him to Bradley county, and deliver him to the sheriff and jailor thereof to be held in custody there subject to the order of the Bradley Circuit Court, etc. And the mandate of this Court, with a copy of its opinion, must be sent to the Bradley, as well as the Jefferson Circuit Court, that the cause may be proceeded with in accordance with law, and not inconsistent with this opinion.

Absent, Mr. Justice Scott.