WILKIN *v*. STATE.

Opinion delivered November 29, 1915.

1.  CRIMINAL LAW—INSOLVENT BANK—RECEIVING DEPOSIT—INDICTMENT.—
    An indictment charged in one count that defendant knowingly
    received and accepted a check on deposit and knowingly permitted
    a check to be received and accepted on deposit when the bank
    was insolvent.   *Held*, the indictment charged the commission of
    but one offense, and was good on demurrer.

2.  CRIMINAL LAW—INSOLVENT BANK—ACCEPTING DEPOSIT—PRESIDENT.—
    The president of an insolvent bank was absent from the State,

when the cashier thereof accepted a deposit; the president was indicted in one count for accepting a deposit, and for knowingly permitting the same to be received. *Held*, when the State's testimony was directed to prove that defendant, as president, permitted the deposit to be received, that it was not error for the trial court to refuse to require the State to elect upon which charge it would stand.

3. CRIMINAL LAW—INSOLVENT BANK—RECEIVING DEPOSIT—VARIANCE.— Where the cashier of an insolvent bank received an unindorsed check, and indorsed and collected the same, when the president of the bank was charged with permitting the receipt of a deposit, knowing the bank to be insolvent, there is no variance between the indictment and the proof.

4. CRIMINAL LAW—INSOLVENT BANK—RECEIPT OF "CHECK."—In a prosecution under Kirby's Digest, § 1814, for the receipt of a draft, knowing the receiving bank to be insolvent, the word "draft" as used in the statute and in the indictment, *held* to include the word "check."

5. CRIMINAL LAW—ACTS OF CO-CONSPIRATOR—VENUE.—A conspirator is criminally responsible in any place where any overt act is done by any of his co-conspirators.

6. CRIMINAL LAW—INSOLVENT BANK—KNOWINGLY PERMITTING RECEIPT OF DEPOSIT—ABSENCE FROM STATE—QUESTION FOR JURY.—Defendant, as president of an insolvent bank, was indicted for the crime of permitting the receipt of a deposit, knowing the bank to be insolvent. It appeared that while the defendant was out of the State, that the cashier of the bank received the deposit, which constituted the crime charged. *Held*, that, although the defendant was out of the State when the criminal act was done, if he knew at the time that the bank was insolvent at that time, that he would be responsible under Kirby's Digest, § 1814; but that, where defendant testified that he had no such knowledge at the time, that it was error to refuse to submit the issue of his knowledge to the jury.

7. BANKS AND BANKING—INSOLVENCY.—A bank is insolvent in contemplation of the statute, Kirby's Digest, § 1814, when its assets and property are of such character and value that it is unable to meet its demands in the usual and ordinary course of business.

8. BANKS AND BANKING—INSOLVENCY—PROOF OF.—The insolvency of a bank may be proved by circumstantial evidence which is competent under the rules of evidence, as well as by direct evidence.

Appeal from Lonoke Circuit Court; *Thomas C. Trimble,* Judge; reversed.

*A. G. Powell,* of Atlanta, Ga., *J. G. & C. B. Thweatt, Geo. F. Chapline, Manning, Emerson & Morris,* for appellant.

1. The demurrer should have been sustained because the indictment charges in a single count two separate and distinct offenses. Kirby's Dig., § 2230; 48 Ark. 94, 102; 22 Cyc. 376; *Id.* 377; 44 Ark. 62; 83 Ark. 244; *Id.* 249; *Id.* 254; 36 Ark. 56.

2. There is a variance between the indictment and the proof in that the indictment charged the deposit of a check endorsed by E. B Robinson, a necessary and essential allegation, while the proof affirmatively shows that the check was not so endorsed when it was deposited. 91 Ark. 1; 120 S. W. 156; *Skarda* v. *State,* 118 Ark. 176.

3. The proposition that a person absent from the State may commit a felony therein, is true only within certain well defined limitations and subject to certain well defined conditions. If the crime takes effect in the State where the prosecution is had and the accused has acted through an inanimate agency or an innocent agent, the fact that the accused was beyond the limits of the State at the time makes no difference; he is amenable to the laws of the State where the crime took effect. On the other hand, if the accused is beyond the limits of the State at the time the crime is committed, and the crime is effectuated through a conscious responsible agent who acts within the State, the accused is not amenable to prosecution in the State where the crime takes effect. 12 Cyc. 208; 17 Ark. 561; 65 Am. Dec. 452; 51 Ind. 413; 19 Am. Rep. 739; 19 Ind. 421; 80 Am. Dec. 408; 26 N. H. 448; 59 Am. Dec. 354. Under the foregoing authorities, if the president's act is accessorial in essence, he cannot be prosecuted in this State, if absent therefrom at the time the deposit was received, provided the cashier who received the deposit acted consciously and knowingly.

On the other hand, if the act of permitting a deposit to be made is not, under the statute, an accessorial relationship to the act of receiving it, but is a separate and distinct offense, then the venue of that offense is located

at the place where the person who did the permitting happens to be at the time.  73 Ark. 428; 73 Ark. 333; 126 Pac. 655.

4.  In its charge to the jury, the court, in summing up what would be necessary to convict, erred in omitting all reference to the defendant's having received the deposit or having permitted it to be received, and, therefore, did not submit to the jury what would or would not be necessary to show acceptance of the deposit or permission for the acceptance on his part.  The jury were instructed to convict without regard to this issue, or any excuses the defendant might have shown in relation thereto.

The president, acting independently of the board of directors, has no power to receive a deposit, nor to prevent the cashier from receiving it; and certainly where he is absent and the board of directors and the cashier are present at the place where the bank is conducted he has no power to order the bank closed to depositors.  5 Cyc. 468; Morse on Banking, § 144; 109 N. W. 15.

The defendant had no knowledge that this deposit was being made or was to be made or that it had been made until after the bank was closed.  Knowledge of the thing permitted is involved in the very idea of permission.  28 N. W. 475.  In penal statutes, the word "permit" is not passive; it refers to positive assent after knowledge.  46 N. E. 1050; 56 N. W. 594; Am. Eng. Enc. of L. tit. "Permit."

This statute having been adopted *verbatim* from a Kansas statute, the construction given it by the courts of that State will be adopted here.  82 Ark. 334; 98 Ark. 125; 104 Ark. 417; 113 Ark. 552.  The Kansas court has held, construing this statute, where a president of an incorporated insolvent bank was charged with having knowingly received and accepted deposits, knowing the bank to be insolvent, that, "in order to sustain a conviction the proof must show that the defendant had some direct, personal connection with the receipt or acceptance of the deposit," and "the facts that he was president of the bank and in a back room at the time the deposit was

received, and that he knew the bank was open for business, are insufficient to sustain a conviction under such a charge." 60 Kan. 94; 55 Pac. 342.

5. The court erred in admitting evidence of other deposits, and of conversations and financial transactions with Skarda, had in defendant's absence and without his knowledge of participation. 60 Kan. 94; 55 Pac. 342; 146 Mo. 207; 48 S. W. 72; 151 S. W. 564.

*Wallace Davis,* Attorney General, and *Jno P. Streepey,* Assistant, for appellee.

1. While it is erroneous to charge more than one crime in one indictment, except in certain cases provided for by statute, it is not erroneous to charge the commission of a crime in different modes. Kirby's Dig. § 2230. The words *receiving* and *accepting* as used in this statute, are synonymous. 109 Ark. 513, 515.

2. The evidence to support the verdict is sufficient. It is conflicting as to whether or not the bank was insolvent at the time it suspended business, hence the jury's verdict will be received as conclusive on that point. Moreover this court has held on practically the same evidence in a preceding case that the bank was insolvent. 109 Ark. 130; *Id.* 138; 118 Ark. 176.

3. The evidence with reference to the endorsement of the check does not amount to a variance. It is not material in this case whether the cashier endorsed the check or the man who deposited it. It is sufficient to show that the check was endorsed and did circulate as money.

As to the effect of appellant's absence from the State at the time the deposit was made:

Appellant here was charged with knowingly *permitting* a deposit to be received and accepted, etc., and the Kansas case relied on did not pass upon the proposition as to whether or not the president of the bank would be guilty if he *permitted* the acceptance of a draft after he had knowledge of the insolvency of the bank. That case, therefore, is not authority against the State's contention.

Mississippi has a similar statute, providing a punishment: "If a president or manager * * * of a bank received a deposit *knowing,* or having, good reason to believe, the establishment to be insolvent," etc. Code Miss. 1906, § 1169. Sustaining the State's position see decision of Supreme Court of that State in *State* v. *Mitchell,* 51 So. 4, 10; also 62 So. (La.) 145, 150; 119 Pac. (Ida.) 30, 35; 118 Pac. (Wash.) 7, 13.

5. There was no error in the admission of evidence of other transactions with the cashier. The jury were specifically instructed that "These acts and declarations have been admitted for the consideration of the jury solely upon the question as to whether or not the bank was insolvent." *Skarda* v. *State,* 118 Ark. 176.

6. Instruction No. 1 given at request of the State was correct. It is sufficient, where the indictment charges that the accused permitted the receipt and acceptance of the deposit, to instruct the jury that they must find "that the deposit was made as charged in the indictment." Moreover, the court is not required to state all the law in any one instruction.

HART, J. W. J. Wilkin was indicted for violating section 1814 of Kirby's Digest by knowingly accepting and receiving on deposit and by permitting and conniving at the receipt and acceptance on deposit of money in the bank of which he was president when it was insolvent. He was tried before a jury and convicted, his punishment being fixed at three years in the State penitentiary. From the judgment of conviction he has duly prosecuted an appeal to this court.

This is a companion case to that of *Skarda* v. *State,* reported in 118 Ark. 176, 175 S. W. 1190. Joe Skarda was the cashier and W. J. Wilkin was the president of the Bluff City Bank in the town of De Vall's Bluff, Arkansas. The bank was placed in the hands of a receiver on March 20, 1913.

On February 28, 1913, E. B. Robinson deposited a check for $600 in the bank. The check was accepted by the cashier and this was the transaction upon which the present prosecution is based.

(1) The first assignment of error which it is insisted calls for a reversal of the judgment is that the court erred in not sustaining the demurrer to the indictment. The indictment charges in the same count that the defendant knowingly received and accepted a check on deposit and knowingly permitted a check to be received and accepted on deposit when the bank was insolvent.

We do not think the court erred in overruling the demurrer. This is not a case of an indictment charging in the same count two separate and distinct offenses for which different punishments are prescribed. The indictment charges the commission of but one offense. The act of knowingly receiving and accepting a deposit and knowingly permitting it to be received and accepted constitutes the same offense. It is true it may be committed in a different mode but the punishment is the same and the same character of testimony is necessary in each case.

(2) Moreover, we do not think the court erred in not requiring the State to elect for the reason that no prejudice could have resulted to the defendant in the present case. The record shows that the deposit was received by the cashier while the president was absent in another State. No attempt whatever was made by the State to prove that the president himself accepted or received the deposit; on the other hand, all of the evidence adduced by the State pointed to the fact that the cashier received the deposit and that the president at the time was in another State. The State directed its whole efforts to prove that the defendant as president of the bank allowed a deposit to be received knowing the bank to be insolvent.

(3) The next assignment of error is that there was a variance between the indictment and the proof as to the endorsement of the check. The indictment alleged the deposit in the Bluff City Bank of a check drawn on the People's Bank by Higgins & Robinson, payable to E. B. Robinson and endorsed by E. B. Robinson. There is no dispute in the proof on this point. Robinson handed the check to Skarda, cashier of the Bluff City Bank, but

did not endorse it. Skarda, in order to collect the check from the People's Bank, subsequently endorsed it and received the money therefor. The jury might legitimately have inferred from this testimony that Robinson deposited the check for the purpose of collecting it and through inadvertence did not endorse it and that this was understood to be the state of facts by the cashier because he subsequently endorsed the check and collected it. Thus it will be seen that the whole transaction was treated as if the cashier had received the check as the equivalent of money and we do not think there was any variance between the indictment and the proof.

(4)    The word "draft" as used in the act under which the indictment was drawn is a general term and includes checks. It is manifest that the deposit of a check falls as clearly within the reason of the statute as deposits of other commercial paper circulating as money. *Cunningham* v. *State,* 115 Ark. 392.

(5-6)    We shall next consider the effect of the defendant's absence from the State at the time of the commission of the offense.

It may be well to state at the outset that the evidence on the part of the State tended to show that the bank was insolvent at the time the deposit in question was received, that there had not been a meeting of the board of directors for many months prior thereto, that the affairs of the bank were in charge of the president and the cashier, and that the president was engaged in the mercantile business, his store being just across the street from the bank and that he was daily consulted about the conduct of the business of the bank.

The defendant left the town of De Vall's Bluff on the 18th or 19th day of February, 1913, and did not return until the first day of March, 1913. The testimony on the part of the defendant tended to show that his store house was burned on February 23, 1913; that he was sick at the time his store was burned and returned home as soon thereafter as he was able to travel; that the cashier had the active control and management of the affairs of the bank; and that the defendant was of the opinion

that if his store had not burned down thus entailing upon him a great loss the affairs of the bank could have been so conducted and managed that it would not have become insolvent. His evidence also tended to show that he did not give the cashier any direction whatever in regard to the deposit in question.

Our Constitution has expressly fixed the boundaries of the State and it is clear that each State is sovereign within its own limits. It is also equally clear that the criminal laws of a State can have no extra-territorial operation. The crime for which the defendant was indicted is a statutory offense and he may be deemed in law guilty under the statute although at the time the crime was committed he was out of the State. For instance, if the defendant as president of the bank had known of its insolvent condition and the cashier and his assistants had not known of its insolvent condition and the president had directed them to continue to receive deposits and had then gone beyond the limits of the State, he would have been guilty, under the statute, although not personally within the State when the offense was actually committed. In such case his agent acting under his authority and guidance would be guiltless because he would not have received the deposit knowing the bank to be insolvent; and the president alone would be the guilty party although at the time of the perpetration of the offense he was out of the State and within the limits of the State of Georgia. This is so because the defendant would have put into operation in this State the acts which constitute the essential elements of the crime.

It will be remembered that the gist of the offense is receiving and accepting or permitting to be received and accepted deposits knowing the bank to be insolvent. In the instance last cited the president, knowing the bank to be insolvent, directed the cashier and his assistants to continue receiving deposits and then himself went beyond the boundaries of the State and although the deposit may have been received after he placed himself within the boundaries of another State, yet he would be

deemed guilty because he directed the deposits to be received while yet in the State of Arkansas.

As bearing on the question see *Commonwealth* v. *White,* 123 Mass. 430, 25 Am. Rep. 116; *People* v. *Adams,* 3 Denio (N. Y.) 190, 45 Amer. Dec. 468; *Johns* v. *State,* 19 Ind. 421; Wharton's Criminal Law (11 ed.), Vol. 1, Sec. 324 and 333.

Again, if the president and cashier, both knowing the bank to be insolvent, should agree that the president should leave the State and that the cashier should continue to receive deposits while he was gone, and deposits should be received after the president had gone out of the State, the president would be guilty because the offense stated would amount to a conspiracy and it is well settled that each conspirator is responsible in any place where any overt act by any of his co-conspirators is done. In such case the crime having been concocted and started while the president was in the State of Arkansas, the immediate act of the cashier in receiving the deposit after the president left the State would be deemed in law the act of the president also. See Wharton's Criminal Law (11 ed.), Vol. 1, § 333.

Counsel for the State have cited the case of *State of Mississippi* v. *Edmund Mitchell,* 51 So. 4, 26 L. R. A. (N. S.) 1072, and other cases of like character as holding to the contrary and as being authority that the defendant is guilty under the facts of the present case. We do not think the cases cited are susceptible of the interpretation placed upon them by counsel for the State. In the case just referred to the defendant was within the State of Mississippi at the time of the offense was committed. Therefore the question of his being within the limits of another State when the offense was committed did not arise and was not decided by the court. It will be observed that in that case the defendant was within the jurisdiction of the courts of the State of Mississippi when the crime was committed and the question up for determination in this case did not arise and was not determined. Moreover, in that case the bank was a partnership and the person receiving the deposit acted as agent for his

principal, the principal knowing at the time that the bank was insolvent.

We do not deem it necessary to set out the instructions given by the court on the point we have just discussed. It is sufficient to say that the instructions entirely ignored the theory of the defendant to the effect that he did not conspire with the cashier to receive the deposit while he was within the State of Georgia. According to the testimony of the defendant his trip to the State of Georgia had no connection whatever with the affairs of the bank and he did not in any manner participate in the transaction for which he was indicted. That is to say, according to the evidence adduced in his behalf the defendant did not in any manner participate in the transaction for which he was indicted. As already indicated, the accused's personal presence in the State is not always necessary to make him guilty under the statute, but the court should have submitted to the jury the question of his guilt or innocence under the principles of law above announced, and not having done so the judgment must be reversed.

(7) It is also insisted by counsel for the defendant that the court erred in admitting testimony as to certain acts and declarations of the cashier of the bank and of other persons connected with the bank of which the defendant had no knowledge. The record shows that the court expressly told the jury that these acts and declarations were admitted solely upon the question as to whether the bank was insolvent. A bank is insolvent in contemplation of the statute* under consideration when its assets and property are of such character and value that it is unable to meet its demands in the usual and ordinary course of business. It is not essential that the bank shall have on hand sufficient cash to pay all of its depositors or any considerable number of them on the same day, or, in case of a run on the bank or some extraordinary demand. It is only necessary for it to have on hand cash or available assets sufficient to meet the demands that are

---

*Kirby's Digest, § 1814.

usually made on it from day to day in the ordinary course of business. The amount owing by the bank to its stockholders as such, or its capital stock should not be considered as a debt against the bank in determining its solvency. *Skarda* v. *State, supra.*

(8)   The insolvency of a bank may be proved by circumstantial evidence as well as direct evidence but must be proved by competent evidence; and hearsay evidence would be no more admissible to prove that fact than it would be in any other case.

It is also insisted by counsel for the defendant that the evidence is not sufficient to warrant the verdict; that is to say, they claim that the State has failed to prove that the bank was insolvent or that the defendant knew it to be so. In view of another trial we think it best not to state in detail the testimony on this point. A great mass of figures and other testimony was introduced and to attempt to set it out in detail would only lead to confusion when it is considered that additional testimony may be received on a retrial of the case. We deem it proper to say, however, that a careful consideration of the whole record leads us to believe that there was testimony of a substantial character which, if believed by the jury, would warrant it in finding the defendant guilty.

For the errors indicated, the judgment must be reversed and the cause remanded for a new trial.