JOHNSON v. STATE.

Opinion delivered January 15, 1923.

1.  HOMICIDE—EVIDENCE.—Evidence *held* to sustain a conviction of murder in the second degree.

2.  CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—A court is not required to multiply instructions on the same point.

3.  CRIMINAL LAW—ARGUMENTATIVE INSTRUCTION.—It was not error to modify a requested instruction on self-defense by striking out a portion of it that was argumentative and tended to invade the jury's province.

4.  HOMICIDE—INSTRUCTION.—Where, in a prosecution for murder in the first degree, the evidence tended to prove that offense, but not murder in the second degree, an instruction as to the latter offense was not open to general objection, nor was it prejudicial to defendant.

5.  CRIMINAL LAW—MOTION TO EXCLUDE TESTIMONY—DISCRETION OF COURT.—It is within the court's. discretion whether testimony admitted without objection should be excluded on motion after all the testimony is in.

6.  CRIMINAL LAW—EVIDENCE OF ANOTHER CRIME.—Evidence of location and range of fatal wounds inflicted by defendant on deceased's son *held* admissible in a prosecution for murder of deceased, where both killings occurred at the same time and place, and the jury were instructed to confine their inquiry as to the killing of deceased only; the testimony being competent to show motive on part of accused.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; affirmed.

*R. W. Wilson, W. F. Norrell* and *G. P. George,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

HART, J.   Charlie Johnson prosecutes this appeal to reverse a judgment of conviction against him for murder in the second degree.   The defendant was indicted for murder in the first degree and was tried before a jury, which found him guilty of murder in the second degree and fixed his punishment at twenty-one years in the State Penitentiary.

According to the evidence for the State, Charlie Johnson shot and killed R. B. Wood on the 15th day of May, 1922, in Drew County, Ark. Some time in January, 1922, Elston Wood, a son of R. B. Wood, deceased, killed Curtis Baker, a half-brother of the defendant. Elston Wood had been convicted, and, pending an appeal to this court, was out on bond. The killing of Baker had engendered ill feeling between the family of deceased and that of the defendant. The defendant lived with his mother on a farm which adjoined the farm of R. B. Wood, there being only a lane between them. Elston Wood and Calvin Downey, his brother-in-law, cultivated land on the farm of the deceased, and were engaged in planting cotton when the killing occurred. Elston Wood and Downey had finished planting one piece of land and had gone to another piece which was only separated from the farm of the defendant's mother by a narrow lane. They started to planting cotton in this field. R. B. Wood was sixty-five years of age, and was unable to work. He was barely able to come out into the field and watch his son and son-in-law work. On the morning of the killing he came into the field and sat down by a stump near where his son and son-in-law were engaged in planting cotton. The defendant was engaged in plowing in his mother's field just across the lane. When he saw deceased and his son and son-in-law come into the field adjoining that in which he was plowing, he went to his mother's house and brought back a high-power rifle which he laid across the plow-handles while plowing. After plowing a while, he came to the lane between the two farms, only twenty-five or thirty yards distant from the deceased and his son. He shot and killed Elston Wood with his rifle, and, just as he heard the shot, R. B. Wood started to raise up from where he was sitting beside a stump. Before he had raised up, the defendant shot and killed him with the rifle. Calvin Downey, the son-in-law of the deceased, started to run away in a zigzag direction across the field, fearing that the defendant would

kill him. The wife of Elston Wood was washing clothes about 150 yards away. She looked up when she heard the first shot, and ran into the house and got a pump shotgun and a 38-caliber pistol. She ran towards the place where the defendant was and emptied the shotgun and pistol at him. The defendant ran towards his mother's house and escaped injury.

According to the evidence for the defendant, Elston Wood first commenced shooting at him, and he killed him and his father in his own necessary self-defense. He had placed the gun on his plow-handles in order to defend himself if attacked by any member of the Wood family. He saw them at work in the adjoining field, and knew they were armed.

According to the evidence for the State, neither the deceased nor his son and son-in-law were armed. This is a brief summary of the evidence for the State and for the defendant. A bare recital of it shows that the verdict of the jury is sustained by the evidence for the State, and no further discussion of this assignment of error is necessary.

Counsel for the defendant contend that the court erred in refusing to give instruction No. 6 requested by the defendant. The instruction is as follows:

"Justifiable homicide is the killing of a human being in necessary self-defense of habitation, persons or property, against one who manifestly intends or endeavors by violence or surprise to commit a known felony. The right of self-defense is one to which every man is entitled, and which he may reasonably exercise whenever the emergency may demand, even to the extent of taking human life; and where one is himself, without fault, assaulted in such manner as makes it reasonably apparent that his life is in such present and imminent peril and the danger is so urgent and pressing that it is necessary to take the life of his assailant in order to save his own life, or prevent and preserve himself from great bodily harm, he may stand his ground and repel force with

force, to the extent of killing his adversary, provided he does so in the actual honest belief that it is necessary, and acts under all the circumstances in a reasonably prudent manner."

The matters embraced in the instruction were given by the court in an instruction for the State. Instruction No. 8 reads as follows:

"Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony. In ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant; but where the assault is so sudden and violent as to make it reasonably apparent that it would be equally as dangerous to retreat as not, then one would not be bound to retreat, but might stand his ground and repel force with force, even to the extent of taking life to save life or prevent great bodily harm.

"A bare fear of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under their influence, and not in a spirit of revenge."

It will be observed that all the matters embraced in the instruction asked by the defendant were fully covered by the instruction given for the State, and it has been uniformly held in this State that a court is not required to multiply instructions on the same point. The instruction given was in accordance with the views expressed in our previous decisions relating to the question. *Duncan* v. *State,* 49 Ark. 543, and *McDonald* v. *State,* 104 Ark. 317.

The next assignment of error is that the court erred in refusing to give instruction No. 7 asked by the defendant. The instruction as asked is as follows:

"You are instructed that, if you believe from the evidence in this case that the deceased had threatened the life of the defendant, and that these threats had been communicated to the defendant at some time prior to the killing, and that deceased's reputation for turbulence and violence or peace and quietude was bad, and this reputation was known to the defendant, then the defendant had a right to arm himself with a gun loaded in any manner he saw fit, for the purpose of defending himself against any unlawful assault that the deceased might make upon him, and the law does not hold him to the same deliberate action it does under ordinary circumstances."

The court modified the instruction by striking therefrom the following: "and the law does not hold him to the same deliberate action it does under ordinary circumstances." The court did not err in modifying the instruction. The part stricken out was argumentative and tended to invade the province of the jury.

The next assignment of error is that the court erred in giving to the jury instruction No. 19, which reads as follows: "If the jury should find that the defendant fired the fatal shots, one of which took the life of R. B. Wood, the deceased, at a time when Elston Wood and Calvin Downey were plowing in the field and R. B. Wood was near a stump, and while they were making hostile demonstrations toward the defendant, and that he fired the shots not in necessary self-defense but from a spirit of malice and revenge, but without premeditation and deliberation, he would be guilty of murder in the second degree."

Counsel for the defendant made only a general objection to this instruction, but now insists that it was erroneous because the defendant was either guilty of murder in the first degree or should have been acquitted.

While this is true, the instruction was favorable to the defendant, and the error is not one of which the defendant can complain on appeal. *Glenn* v. *State,* 71 Ark. 86; *Rogers* v. *State,* 136 Ark. 161; and *Webb* v. *State,* 150 Ark. 75.

The next assignment of error is that the court erred in permitting the State to impeach one of defendant's witnesses. It appears from the record that no objection was made to this testimony at the time it was given. An objection was first made after all the evidence in the case had been given to the jury. Counsel for the defendant then moved to exclude the testimony, and it was within the discretion of the court to refuse to exclude it at that time. No abuse of the discretion is shown, and we hold that assignment of error is not well taken.

The next assignment of error is that the trial court erred in permitting the State to show the location and range of the wounds inflicted upon Elston Wood. While the defendant was being tried for the killing of R. B. Wood, yet Elston Wood was first killed by him. Both killings occurred at the same time and place and were necessarily parts of the same transaction. The two shots were fired in quick succession, and the testimony was competent as tending to show motive on the part of the defendant. Besides, the court gave to the jury on this point an instruction as follows:

"You are instructed that the defendant is now being tried for the killing of R. B. Wood, and while there has been evidence to show he killed J. E. Wood also, you are instructed that you should not consider the question as to whether or not the defendant was justified in killing the said J. E. Wood, but you should confine your inquiry solely to the killing of R. B. Wood and the facts and circumstances surrounding the same. And the jury should not consider the killing of J. E. Wood whatever except for the purpose of shedding light upon the killing of R. B. Wood."

The next assignment of error is that the court erred in allowing the prosecuting attorney to ask leading questions, and also erred in allowing certain remarks to be made by the prosecuting attorney in his argument to the jury. We have carefully examined the record on both these assignments of error and find them not well taken. We do not deem it necessary to extend this opinion by setting forth the remarks of the prosecuting attorney or making an extended discussion with reference thereto.

.Other assignments of error are pressed upon us for a reversal of the judgment, but we do not deem it necessary to discuss them separately or in detail. It is sufficient to say that the respective theories of the State and of the defendant were fully and fairly submitted to the jury in the instructions of the court upon competent evidence.

We find no reversible error in the record, and the judgment must be affirmed.