HANSON v. STATE.

Opinion delivered October 8, 1923.

1. CRIMINAL LAW—CHANGE OF VENUE—PRESUMPTION AS TO INDICTMENT.—Where a criminal case was transferred to an adjoining county on a change of venue, though the transcript of the record filed in such case fails to show the opening of the court from which the venue was changed or the impanelment of the grand jury or the return of the indictment into court by the grand jury, an indorsement by the clerk on the indictment that it "was filed in open court in the presence of all the grand jury" makes a *prima facie* case that defendant was properly indicted,

which must be regarded as conclusive in absence of any showing to the contrary.

2. BANKS AND BANKING—INSOLVENCY—EVIDENCE.—Where a committee of bankers examined the assets of a bank, it was not error, in a prosecution of an officer of the bank for assenting to the reception of deposits after he knew the bank was in a failing condition, to permit such committee to testify that the bank was in a failing condition.

3. CRIMINAL LAW—HEARSAY.—In a prosecution of a bank officer for permitting deposits to be received while the bank was in failing condition, testimony of an express agent that he had received for collection a draft from a bank in a neighboring town with directions to accept nothing but legal tender in payment was incompetent to show that the bank in question was in a failing condition.

4. BANKS AND BANKING—INSOLVENCY—EVIDENCE.—Testimony of a depositor, in prosecution of a bank officer for permitting deposits to be received while the bank was in failing condition, that, after the bank closed its doors, he found a check for $1,500 with his name signed to it, which was signed by the cashier of the bank, in order to make it appear that the cashier's account was not overdrawn, *held* admissible as tending to show the bank's failing condition.

5. CRIMINAL LAW—EVIDENCE—HEARSAY.—In a prosecution of a bank officer for permitting deposits to be made in a bank while in a failing condition, a statement made by the cashier before the bank failed that defendant and another were getting too much money out of the bank was inadmissible as being hearsay.

6. CRIMINAL LAW—REFUSAL OF ABSTRACT INSTRUCTION.—It was not error to refuse an instruction in the language of a section of the banking law where much of the section was abstract, so far as the issues in the present case are concerned.

7. BANKS AND BANKING—INSOLVENCY—RECEIVING DEPOSITS—INSTRUCTION.—In a prosecution of a bank official under Crawford & Moses' Digest, § 697, for assenting to reception of deposits while the bank was in failing condition, it was not error to refuse to charge that the phrase "in failing condition" meant that the bank was not only insolvent in fact, but that it contemplated closing its doors on that account; the phrase "in failing condition" being used in the statute as synonymous with the word "insolvent."

Appeal from Nevada Circuit Court; *J. H. Crawford,* special judge; reversed.

*Searcy & Searcy, Tillman P. Parks* and *McKay & Smith,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant was a director and vice-president of the Lafayette County Bank, and was indicted and convicted for assenting to the reception of deposits by that bank after he knew the bank was in a failing condition.

The trial was had in Nevada County, upon a change of venue from Lafayette County, and for the reversal of the judgment it is first insisted that the transcript of the record made up by the clerk of Lafayette County contains no entry showing the opening of the circuit court of Lafayette County, nor of the impanelment of the grand jury, nor of the return of the indictment into court by the grand jury. The indictment is in the usual form, and purports to have been regularly returned by the grand jury of Lafayette County, and the transcript made up by the clerk of that county and certified to by him when the venue was changed, recites that it was "filed in open court in the presence of all the grand jurors this the 22nd day of February, 1922. J. H. Landers, Clerk."

In support of this contention the case of *Binns* v. *State,* 35 Ark. 118, is relied on. In that case a motion in arrest of judgment was filed upon two ground: (1), that the transcript of the record on change of venue contained no entry showing the opening of the circuit court at the term at which the indictment purported to have been found; and (2), that it contained no entry showing the impaneling of the grand jury. The court held the objections were well taken in fact, but before final judgment was filed a certiorari was ordered and a transcript returned which embraced the entries omitted in the original transcript, and the judgment was affirmed.

The opinion in that case was written by Chief Justice ENGLISH, and cited the earlier case of *Green* v. *State,*

19 Ark. 178, the opinion in which case was also written by Judge ENGLISH.

In this case of *Green* v. *State,* the motion in arrest was filed after the return of the verdict of the jury, which submitted the question, "whether a grand jury had been, in point of fact, duly impaneled at the term of the court at which the indictment, upon which he had been tried, purported on its face to have been found." It was upon this question that the writ of certiorari issued, and the court approved that action as a proper practice.

In this case of *Green* v. *State, supra,* there was a second ground for the arrest of the judgment, this being that the transcript did not show that the indictment was returned into open court by the grand jury. This omission was not cured by the return of the clerk to the writ of certiorari, although a statement of the clerk accompanying his return cured this omission, but the court disregarded this statement of the clerk as amounting to nothing, and held that the motion in arrest should have been sustained because there was no showing in the transcript that the indictment was returned into open court by the grand jury. But in the recital of facts leading up to this conclusion the court said: "It is true that there is no record entry copied in the transcript showing that the grand jury did return the indictment into court. Nor is there any note by the clerk upon the back of the indictment of its having been returned into court, and filed, as it appears in the transcript."

We think the intimation is clear that, if there had been a notation upon the back of the indictment that it had been returned into open court and filed, the court would not have held that there was no showing that the indictment had been returned into open court.

This decision was handed down in 1857, and at a time when matters of form were more scrupulously followed than they have been since the adoption of the Criminal Code, which occurred long after the above decision was rendered. Here there was a notation on the

back of the indictment, made by the clerk of the court, that the indictment "was filed in open court in the presence of all the grand jury," and, in the absence of any evidence to the contrary, we assume that the trial court accepted this notation as a fact, and we think that action was warranted; and if these recitals are accepted as true, there was a term of court in which, during a session thereof, a grand jury, in the presence of all its members, returned the indictment upon which appellant was tried.

We know, as a matter of law, as well as from the transcript before us, that the venue was changed on appellant's motion and for his benefit and the proceedings thereby removed from the county where the indictment was returned to the county where the trial occurred, and we think the recital indorsed by the clerk on the indictment makes a *prima facie* showing that appellant had been properly indicted, which must be regarded as conclusive in the absence of any showing that that recital is untrue.

It is very strongly insisted that the court erred in permitting certain witnesses to testify that the bank was in a failing condition on December 16, 1920, this being the day on which the deposit was received. It appears that a committee of bankers examined the assets of the Lafayette County Bank. They did this by going through the collateral held by that bank, and by inquiring about the security for each piece of paper. They did this to determine whether the banks which they represented should extend additional loans to the Lafayette County Bank. It was admitted that the Lafayette County Bank had allowed its cash to fall below the legal reserve required by § 689, C. & M. Digest, and the assistance requested from the committee of bankers would have met this requirement. The committee was assisted in its examination of the bank's assets by the cashier of that institution, but appellant was not a party to the examination. At the conclusion of this examination it was the opinion of each

member of the committee that the bank was in a failing
condition; and it is the admission of this testimony which
is assigned as error.

We think the testimony was competent, and that it
was something more than the mere expression of an opin-
ion. The solvency of the bank could not be ascertained
as a mere matter of addition of its assets and the sub-
traction of its liabilities. The bank's solvency depended
on the value of its assets, and the examination by the com-
mittee was to determine that fact. The assets were ad-
mittedly not worth their face, and the examination was
to determine what they were worth. The liabilities of
the bank were admitted, and we think it was no usurpa-
tion of the province of the jury to permit one to testify
that he had gone through the assets of the bank and had
found what their value was. Of course, this testimony
was not conclusive on the jury, and other testimony on
the subject was heard, including that of appellant him-
self, who, in great detail, testified in regard to the value
of collateral which he had deposited with the bank as the
basis of the credit which he had himself obtained. These
bankers were shown to be familiar with the value of the
assets about which they testified, and we think there was
no error in the admission of their testimony.

The court permitted the agent of the express com-
pany in the town where the bank was located to testify
that, as agent of the express company, he had received
a collection from a bank in Texarkana, with directions
to accept nothing but legal-tender or money in payment
of the draft sent him for collection, the usual custom
being to accept exchange drawn on some other bank.
The effect of this testimony was, of course, to show that
the Texarkana bank regarded the Lafayette County Bank
as in failing condition, and this is hearsay testimony, pure
and simple. There was no showing upon what facts this
opinion was based, nor that it was the opinion of the
Texarkana bank officials, except as it was represented so
to be by the testimony of the express agent. In the case

of *Wilkin* v. *State,* 121 Ark. 219, we held that the insolvency of a bank might be shown by circumstantial evidence, but that the insolvency must be shown by competent evidence and could not be shown by hearsay evidence, and that hearsay evidence would be no more admissible to prove insolvency than it would be in any other case.

Objections were saved to the action of the court in permitting witness Tatum to testify that, after the bank had closed its doors, he found a canceled check for $1,500, with his name signed to it, which he had not signed or authorized any one else to sign. This check had been made out and signed by Bolger, the cashier of the bank, and was done by that officer in order that it might not appear, after the State Bank Commissioner had taken over the affairs of the bank, that his (the cashier's) account was overdrawn.

The admission of this testimony is defended upon the ground that it tended to show that the bank was in failing circumstances when the deposit in question was received. It did tend to show that fact in this way. If this transaction were unexplained, it would appear that the bank did not owe Tatum the deposit, $1,500, when, in fact, that obligation subsisted. It cannot be said that it did not affect the showing of solvency. The jury might well have found that the overdraft with which the cashier would be charged was not the equivalent of a cash deposit. As a matter of bookkeeping, the result may not have been changed, but as a matter of the value of the bank's assets it might, in the opinion of the jury, have made quite a difference. There was no showing that appellant knew of this transaction or was a party to it, and he was entitled to have the jury told that the testimony could be considered for the purpose only of determining whether the bank was in failing condition. But, as we have said, it was competent for that purpose, and, this being true, it was not rendered incompetent because it tended to show that the cashier may have committed an offense not charged in the indictment, and one for which

appellant was not responsible, except that it was one of many transactions which tended to show that the bank was in failing condition. *Johnson* v. *State*, 156 Ark. 459.

The court permitted witness Lindsey to testify that in May, 1920, before the bank closed its doors in December, 1920, Bolger, the cashier, had told him, in the absence of appellant, that there were two men, of whom appellant was one, who were getting too much money out of the bank, and that he (Bolger) regretted that he had not quit the bank on the first day of January. This was hearsay testimony, and incompetent as such, and was not made competent as tending to contradict any testimony of Bolger's on the subject of the bank's solvency, and error was committed in admitting this testimony.

The bank had a capital of only $10,000, and a surplus of the same amount, and yet appellant was, directly and indirectly, indebted to it to the extent of over $70,000. He attempted to show that his collaterals were worth this money, and that the bank was not insolvent and could have met its obligations if it could have continued in business and in the usual and ordinary way have realized on the collateral given it by himself and others who had borrowed money. This issue of fact was submitted to the jury; but appellant says error was committed in giving and in refusing to give instructions on that subject.

Appellant asked instructions on the meaning of the phrase, "in failing condition," as used in the statute under which he was convicted. One of these instructions was a substantial copy of § 717, C. & M. Digest, which enumerates the conditions under which a bank shall be deemed to be insolvent; but much of that section is abstract so far as the issues in this case are concerned, and for that reason it was properly refused.

Appellant asked instructions which apparently distinguished between an insolvent bank and one in failing condition, and asked the court to charge, in effect, that the phrase, "in failing condition," meant that the bank

was not only insolvent in fact but that it contemplated closing its doors on that acount. This instruction was properly refused.

As has been said, appellant was charged with having violated § 697, C. & M. Digest, and in this section the word "insolvent" appears to be synonymous with the phrase, "in failing condition," which immediately follows it, and that it was so employed is evidenced by the fact that § 717 defines the five conditions under which a bank is to be deemed insolvent, but contains no definition of the phrase, in failing condition, and no definition of that phrase occurs elsewhere in the chapter on banks and banking.

There have been cases which define the word "insolvent" and the phrase, "in failing condition," but it is unnecessary to review those cases, as this court has fully discussed the meaning of insolvency as used in the section under which appellant was convicted, and no useful purpose would be served by reviewing those cases. *Wilkin* v. *State*, 121 Ark. 219; *Skarda* v. *State*, 118 Ark. 176. See also vol. 2, Morse on Banks and Banking (5th ed.), § 622, pp. 303, 304; vol. 1, Richie, Banks and Banking, § 61 (3b) pp. 401 *et seq.*

Counsel for appellant assign as error the action of the court in refusing him a continuance. But we do not consider that question, as we are reversing the case on another ground.

There was also an objection to the remarks of the prosecuting attorney on the fact that appellant had taken a change of venue. This was an improper argument, but the error thereof appears to have been cured by the admonition of the court to disregard it.

For the errors indicated the judgment must be reversed, and the cause remanded for a new trial.