CUNNINGHAM *v.* STATE.

Opinion delivered November 30, 1914.

1. BANKS AND BANKING—"DRAFTS"—CRIMINAL STATUTE.—The word "draft" as used in Kirby's Digest § 1814, making it a felony for an officer in a bank to receive on deposit any drafts, etc., with knowledge of the bank's insolvency, *held* to be a general term and to include checks as well as other orders drawn for the payment of money.

2. CRIMINAL LAW—INSOLVENT BANK—RECEIVING MONEY.—The cashier of an insolvent bank will be guilty of the crime denounced in Kirby's Digest, § 1814, of receiving a deposit, knowing that the bank was insolvent, when he receives from A. on deposit, and credits to A.'s account a check drawn to A.'s order by B. on B.'s deposit in the same bank.

3. CRIMINAL LAW—INSOLVENT BANK—RECEIVING DEPOSIT—KNOWLEDGE—EVIDENCE.—The knowledge of an officer of a bank that the same is insolvent, within the meaning of Kirby's Digest, § 1814, may be proved by circumstantial evidence, and it is competent to show the condition of the bank both before and after the receipt of the deposit, which constituted the crime.

4. CRIMINAL LAW—INSOLVENT BANK—RECEIVING DEPOSIT—KNOWLEDGE.—When a bank owed its depositors $13,000, and had but $7,000 with which to make payment, evidence of these facts will be held sufficient to show that the cashier, who kept the bank's books, knew that the bank was insolvent.

5. APPEAL AND ERROR—INVITED ERROR.—A cause will not be reversed for error in the admission of incompetent testimony, where the same was in response to a question asked by the appellant's counsel.

6. CRIMINAL LAW—INSOLVENT BANK—RECEIVING DEPOSIT—EVIDENCE.—In a prosecution for receiving a deposit with knowledge that the bank was insolvent, when the assets of the bank were largely represented by the notes of one C., it is competent to introduce evidence of C.'s financial condition, as throwing light on the financial condition of the bank.

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; affirmed.

STATEMENT BY THE COURT.

W. R. Cunningham was indicted for the offense of receiving money in a bank for the credit of a depositor with the knowledge that the bank was insolvent, contrary to section 1814 of Kirby's Digest. The facts are as follows:

Some time in the early part of the year 1911, I. H. Cunningham, brother of the defendant, approached R. A. McEachin, cashier of the Bank of Midland, for the purpose of buying the bank. No agreement was reached on that date. The defendant was not present. I. H. Cunningham, in company with his brother, the defendant, on the 14th day of May, again approached the cashier of the bank for the purpose of buying it. The bank was organized with an authorized capital of $10,000, of which $3,312.50 had been paid. McEachin had been cashier of the bank for about four years, and during that time the bank had not made a profit but had lost about $1,500. The bank had on hand $13,200 in cash and in exchange in other banks. This was money which had been deposited in the bank. At that time the cashier of the bank explained fully to I. H. Cunningham the condition of the bank, including its assets and liabilities, and the defendant was present during that conversation.

McEachin had purchased his stock in the bank from Bache & Denman, former owners of it, but had not paid for it, and the stock had not been issued to him. That was also explained to Cunningham. Cunningham bought the stock of the cashier and of one Quinley at seventy-three cents on the dollar. He paid the cashier $1,800 for his stock and Quinley the sum of $475. The amount which they received for their stock was deposited in the bank to be paid to Bache & Denman with the understanding that Bache & Denman would then transfer the stock to Cunningham. Cunningham took charge of the bank as soon as the sale was made. The defendant became cashier. The defendant continued as cashier of the bank until the 22d day of July, at which time he became sick and did not thereafter have charge of the bank. On the 6th day of August, 1912, the bank closed its doors and a receiver was appointed for it. An examination of the books of the bank was made and the evidence shows that the books showing the daily balances and the condition of the bank were lost after they had been examined by the receiver. On May 15, 1912, I. H. Cunningham bor-

rowed from the bank $5,000.  No note was taken therefor, but a memorandum was made showing that amount of money had been given to him.   Among the notes found in the bank after it became insolvent were the following: Gertrude and I. H. Cunningham, May 25, due six

| | |
|---|---|
| months after date................................$ | 350 |
| P. W. Cunningham, June 30, due January 1, 1913.. | 500 |
| I. H. Cunningham, August 5, due on demand...... | 3,000 |
| I. H. Cunningham, June 20, due January 1, 1913... | 1,000 |
| I. H. Cunningham, June 5, due December 5, 1912.. | 1,000 |
| I. H. Cunningham, June 20, due January 1, 1913... | 2,000 |
| P. W. Cunningham, July 2, due on demand....... | 950 |
| I. H. Cunningham, August 12, 30 days after date.. | 1,084 |

The books also showed that $3,000 was borrowed from the bank at Fort Smith and $4,800 in notes was put up as collateral to secure the loan.

On the first day of July, 1912, James A. Harris, treasurer of Sebastian County, received a check on the Bank of Midland from T. A. Norris, as collector of Sebastian County, for $1,437.51.  He mailed the check to the bank and they sent him a receipt for it, signed by W. R. Cunningham, cashier.  Mr. Norris had more than that amount of money to his credit in the bank and the defendant when he received the check placed it to the credit of Mr. Harris and charged it to the account of Mr. Norris.  After the bank went into the hands of the receiver and an inventory was made it appears that the bank had the notes of the Cunninghams to the amount of more than $9,800.  There was also $1,000 or $1,100 in other notes in the bank which were practically worthless, the receiver being able to collect only about $250 of the amount.  The cash on hand was $10.87.  There was a typewriter worth $50 and a bank safe worth $125.  The desk and bank furniture were valued at $125.  There was an adding machine worth $25 and a printing outfit carried on the books of the bank at $400 which was only worth $50.  Other notes were also deposited in two other banks as collateral security and the value of these notes

was very little more than sufficient to pay off the indebtedness for which they were put up as security.

An examination of the affairs of the bank also showed that the cashier was short more than a thousand dollars and that I. H. Cunningham signed a note for that amount. The receiver investigated the solvency of I. H. Cunningham and the latter told the receiver that he had no property and that there was a mortgage on his home.

P. W. Cunningham was the father of I. H. Cunningham, and the defendant. He also stated to the receiver that there was a mortgage on his home. The receiver also talked with other parties and made an investigation of the solvency of the Cunninghams and found that they were insolvent.

The defendant testified in his own behalf, and said that on the first day of July, 1912, he received through the mail from James A. Harris a check for $1,437.51, signed by T. A. Norris, tax collector; that Mr. Norris had more than that amount of money in the bank at the time, and that when he received the check he placed it to the credit of Mr. Harris and charged it to the account of Mr. Norris. He further testified that he had no interest in the bank and that the loans to his brother and father were made at the instance of I. H. Cunningham; that he took sick on July 22, and was not at the bank after that date; that, so far as he knew, the bank was in good condition on the first day of July, 1912, and that there was more money on hand at that time by several thousand dollars than there was when he went into the bank; that he kept a book of daily balances in which he entered up the checks, deposits and capital stock; that the object in keeping the book of daily balances was to show the condition of the bank each night; that he does not know where the book is now, but that it was at the bank when he became sick. Other facts will be referred to in the opinion. The jury returned a verdict of guilty, and from the judgment of conviction the defendant has duly prosecuted an appeal to this court.

*Holland & Holland,* for appellant.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

HART, J., (after stating the facts). The defendant was indicted under section 1814 of Kirby's Digest, which is as follows: "No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, bills or drafts, circulating as money, or currency, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to, or permit or connive at the receiving or accepting on deposit of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be imprisoned in the State penitentiary not less than three years and not more than five years."

Statutes have been enacted in a number of States making it a crime to receive deposits into a bank if it is known by the officer receiving the deposits that the bank is in an insolvent condition. The purpose of these statutes is not only to protect innocent depositors but to deter bank officials from so conducting the business of the bank as to endanger its solvency. 3 Ruling Case Law, § 117, page 490.

(1) The word "draft" as used in the section of the statute above quoted, is a general term, and includes checks as well as other orders drawn for the payment of money. *State* v. *Warner* (Kan.), 55 Pac. 342.

(2) When the cashier in the instant case received the check he charged the account of Norris with the amount of the check and credited Harris with the amount thereof. It is claimed by counsel for the defendant that because no new money came into the bank that there was no violation of the statute. The money was in the bank, or was supposed to be there, and the transaction was considered and treated as though the cashier had actually paid over the money to Harris and that Harris had im-

mediately redeposited it in the same bank. The transaction was not essentially different from what it would have been had the whole amount of the checks been received from other sources and then deposited in the bank. *State* v. *Shove* (Wis.), 37 L. R. A. 142.

In 3 Ruling Case Law, section 123, page 496, the author says: "The deposit need not be a deposit of money, and although a portion of the money for which the certificate of deposit is issued by a bank consists of that represented by a prior certificate of deposit against the same bank and surrendered at the time that the last deposit is made, the last deposit and the certificate thereof must be treated as if the whole amount had been deposited in cash." Therefore, we are of the opinion that the contention of counsel for defendant is not well taken.

(3) It is also contended that it was error to admit testimony of amounts loaned to I. H. Cunningham after the deposit in question was made on the first day of July, 1912. We do not agree with them in that contention. Under the statute knowledge of the insolvency of the bank on the part of the defendant is made an essential element of the offense and the question is ordinarily one for the jury. It is not essential that knowledge be proved by direct evidence of the defendant's state of mind, but it may be proved by circumstantial evidence. It appears from the evidence in the case that on August 6, a short time after the deposit in question was made, that the bank was admittedly insolvent and that at that time it only had the sum of $10 in money. The proof of the loans made to I. H. Cunningham after the receipt of the deposit in question was so near in point of time that it gave an indication to the jury as to whether or not the bank was insolvent on the first day of July, 1912, the date of the deposit in question. The defendant himself testified that at the time the deposit was received the bank was $7,000 better off than it was when he took charge of it as cashier. It was competent to show the amount of

money that was paid to different persons after the first day of July, 1912, in order to show how much was actually on hand on that date. It was also competent to show how much money was on hand when the bank went into the hands of the receiver and by taking all the facts and circumstances into consideration the jury might determine how much money was on hand at the time the deposit was made. It is contended by counsel for the defendant that the bank was not insolvent at the time the deposit was made. It appears from the statement of facts that at the time I. H. Cunningham took charge of the bank that it had something over $13,000 on hand, and that this money had been placed there by the depositors of the bank. The record does not disclose that the depositors drew any money out of the bank after the Cunninghams took charge of it, except the $3,800 which was placed there by I. H. Cunningham a few days before the bank closed its doors.

(4)  The books of the bank show that it loaned to I. H. Cunningham and his father more than $7,000 before the deposit in question was made; that there was about $1,100 worth of notes on hand, but that these were of very little value, only about $250 being collected on them by the receiver. It is true the bank had some other notes, but they had been put up as collateral security for loans, and were worth very little more than the amount of the loans. There were some furniture and fixtures belonging to the bank, but as it will be seen from the state of facts, they were of but little value. Therefore, it is plain that at the time the deposit was made the bank was due its depositors over $13,000 and had only cash and assets to the amount of not exceeding $7,000 with which to pay it. The defendant admits that he kept the book of daily balances which showed the condition of the bank, and although he stated that the bank was in a solvent condition, from the testimony introduced the jury might well have inferred that he had knowledge that the bank was not solvent at the time he received the deposit.

(5)  Counsel for defendant also assigns as error the action of the court in admitting in evidence a certain note signed by I. H. Cunningham for $1,084.84, dated August 12, 1912, together with a slip of paper attached thereto bearing the words "shortage in cashier's account." The admission of the testimony occurred in this way: McEachin, the former cashier of the bank, testified that after it closed its doors in August, he took charge of the affairs of the bank and had the accounts of the cashier audited. He was asked to state what the auditor's statement showed with reference to the cashier's account. The attorney for the defendant objected on the ground that the statement should show for itself. McEachin was then asked if I. H. Cunningham had not signed a note for $1,084.84, dated August 12, 1912, and replied that he did. He was then asked what the note was given for, and replied that it was given for a shortage that showed in the cashier's account. He further stated that W. R. Cunningham was the cashier referred to, and that the shortage covered the period from the time they purchased the bank until it failed. No objection was made by counsel for the defendant to this testimony. The attorney for the defendant then asked the witness why the defendant's name was not signed to the note, and the witness replied that he was sick at the time the note was given. He was then asked why he didn't make the note show it was given for a shortage in his account, and the witness replied that the slip attached to the note showed that fact. The attorney for the defendant then objected to the introduction of the slip. The court then reminded the attorney that the witness had answered the question in regard to the slip as propounded by him. The attorney for the defendant then asked him again why he did not write in the note that it was given for a shortage, and the witness replied that there was a mortgage given to secure the note and that the slip was attached to the note for information. From this it will be seen that the admission of the testimony in regard to what the slip attached to the note

showed was in response to a question asked by the defendant's attorney; and, if there was error, it was invited error, and no reversal of the judgment can be had on account of it. It was competent to show that the cashier's account was short $1,084.84, for the reason that it tended to show whether or not the bank was solvent or insolvent at the time the check from Norris to Harris was given. No objection was made to the testimony. If objection had been made to it on the ground that it was only competent as tending to show the solvency or insolvency of the bank on the first of July, 1912, doubtless the court, at the request of counsel for the defendant, would have limited it to that purpose.

It is also assigned as error by counsel for the defendant that the court admitted the testimony of the receiver to the effect that he had talked with P. W. Cunningham and I. H. Cunningham, the father and brother of the defendant, and that they admitted that their home was covered by a mortgage; and also testimony to the effect that he had investigated the solvency of these parties and found that they were insolvent. This testimony was competent as tending to show whether the bank was insolvent or not at the date the check from Norris to Harris was deposited in the bank, the Cunninghams being large borrowers from the bank at that time. From the close relationship and association of these parties with the defendant, the jury might have inferred that he knew of the fact of their insolvency.

The judgment is affirmed.