SEASE *v*. STATE.

Opinion delivered October 9, 1922.

1.  COURTS—ORDER CALLING SPECIAL TERM—NECESSARY RECITALS.—Under Crawford & Moses' Dig., § 2218, prescribing jurisdictional requirements in calling a special term of court, it is not necessary that the order calling the special term contain an affirmative recital that the holding of the special term will not interfere with any other court to be held by the same judge.

2.  CONTINUANCE—DISCRETION OF COURT.—Granting or refusing a continuance is discretionary, and the trial court's action will not be disturbed unless an abuse of discretion appears.

3.  CONTINUANCE—PROCURING TESTIMONY OF PHYSICIANS.—In a murder trial it was not an abuse of discretion to deny a continuance to obtain testimony of certain physicians as to accused's mental

condition where no showing was made that defendant had made effort to have an examination by such physicians nor any reason given why the physicians could not have examined him before the trial.

4.  CONTINUANCE—ABSENT WITNESSES—CUMULATIVE TESTIMONY.—In a murder trial denial of a continuance for absent witnesses was not an abuse of discretion where a number of witnesses testified at the trial to the same effect as the absent witnesses would have testified.

5.  JURY—CHALLENGE FOR BIAS.—In a felony trial the court properly refused to sustain accused's challenge to a juror who stated that he had an opinion, based on newspaper reports and what a certain person had told him some of the witnesses would testify, and that it would require testimony to remove this opinion, but that he would decide the case according to the law and the testimony, and would not be influenced by anything that he had heard.

6.  HOMICIDE—INSTRUCTIONS ON INSANITY.—In a murder trial, instructions on the defense of insanity *held* sufficient, though they failed to point out that it was not essential that accused be incapable of choosing between right and wrong generally, and on all subjects other than the act on which he is being tried; there being proof merely of general insanity, and not any special delusion which caused him to commit the act in question, or was in any way connected with the commission of the act.

7.  CRIMINAL LAW—INSTRUCTION ON MENTAL DISEASE.—In a murder trial, an instruction given at defendant's request that it was immaterial that accused's brain trouble, if otherwise a defense, was caused by alcoholism, *held* properly modified by adding that accused "must be suffering from organic brain trouble or a disease of the mind, and not actuated by hate, anger or jealousy or other passion. If, from evil associations and indulgence in vice, his conscience ceases to control or influence his actions, and he is otherwise capable of committing crime, he is responsible."

8.  CRIMINAL LAW—INSTRUCTION AS TO DISCREPANCIES IN TESTIMONY.—In a murder trial, an instruction "that small discrepancies in the testimony as to time and distance may be attributed to inattention or inaccuracies of memory rather than to a wilful or false swearing" was good as against a general objection.

Appeal from Baxter Circuit Court; *Walter L. Pope,* Judge; affirmed.

*Joe George* and *Mehaffy, Donham & Mehaffy,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. R. H. Davidson came to his death as the result of a rifle shot on May 2, 1922, while he was on the farm where he resided, near the village of Buffalo, in Baxter County. Appellant was charged with murder in the killing of Davidson, and on the trial of the cause he was convicted of murder in the first degree and sentenced to death by electrocution.

The shot which killed Davidson was fired from ambush, and the killing was without justification or mitigation.

On the trial of the cause appellant's attorney offered nothing in justification of the crime, but relied upon proof of an alibi and also proof tending to show the mental incapacity of the accused. The principal defense relied on was that of insanity.

Davidson was a farmer and had, only a few months before he was killed, moved from the State of Oklahoma to the farm at Buffalo on which he was living at the time he was killed.

On the day of the killing Davidson and his wife were out in the field planting onions, and appellant, accompanied by Jack Beavers and Albert Beavers, came to the field where the Davidsons were at work, and introduced himself in friendly terms, saying, "My name is Sease: I own a farm next to you," and shook hands with both Davidson and his wife. This was in the afternoon, between two and three o'clock. The party adjourned to Davidson's house, where "moonshine" whiskey was produced by Sease and all present took a drink. Appellant and his two companions had been drinking before they reached the house, and continued to drink. Jack Beavers became grossly intoxicated and went to sleep out on the porch. Appellant and Albert Beavers left the house, appellant saying at the time he was going to Mountain Home that night and would ride Jack's horse. When they left the house, Jack Beavers was still asleep

on the porch, and later in the afternoon the wife and son
of Jack Beavers came to the Davidson house and aroused
Jack from his slumber and carried him home. Davidson
and his wife then went back to the field to work, and
while engaged in work in the field the shot which caused
his death was fired from ambush. Mrs. Davidson testified
to the circumstances, and said that while she was working
beside her husband she heard the sound of a shot and
remarked that, "They are shooting more squirrels," that
her husband failed to answer, and she looked up and saw
him fall, that she screamed, and her husband directed her
to keep quiet. Davidson died in about three minutes
after the shot was fired. Mrs. Davidson testified that the
killing occurred shortly before six o'clock in the evening.

Appellant resided at Cotter, Arkansas, in Baxter
County, and owned a small farm near the Davidson farm.
Jack Beavers was his tenant, and on the day of the kill-
ing he was visiting at the house occupied by Jack Beavers.
Albert Beavers, who lived in the neighborhood, came over
to the house of Jack Beavers, and after dinner appellant
proposed to the other men that they go over to David-
son's, and they all three started up there. Appellant
produced a half-gallon jar of whiskey, and the men began
drinking, and, as before stated, continued drinking whis-
key after they got to Davidson's home.

Albert Beavers had his shotgun with him, and he
testified that after he and appellant left Davidson's house
and separated at the lower end of the field, appellant
walked back a few steps and asked to borrow witness'
gun, saying to the witness, "Let me have it; I'm going to
kill Davidson," and that appellant also stated, with an
oath, that he knew where he could get a gun, and went on
towards the home of Jack Beavers.

It appears from the testimony that appellant had a
Winchester rifle, which he had kept at the Beavers' home
for several weeks, and, according to the testimony of the
wife and son of Jack Beavers, appellant came back to
Beavers' home between four and five o'clock and asked

for his shells and gun, stating to Mrs. Beavers that Davidson was a "spotter", and that he was mad at Davidson and was going to kill him. Appellant had been arrested for making or selling liquor. Mrs. Beavers testified that she pleaded with appellant to desist from committing the act of violence, but that appellant left with his gun, and that after she had gone up to the Davidsons' home and gotten her drunken husband away from there, appellant returned from the direction of the place where the shot was fired, and said that he had "got him," and that he had fired the shot at a distance of about 175 yards.

Jack Beavers testified that he lost consciousness when he became grossly intoxicated at the home of Davidsons and did not remember anything distinctly until during the night—about two or three o'clock in the morning—when appellant returned to the home of witness and awakened him and stated that he had killed Davidson—that he had shot him with a Winchester. This witness related the full statement of appellant, in which he detailed the circumstances under which he fired the shot, and stated that he did not have any cause for killing Davidson.

There was other testimony tending to prove the statements of appellant, which amounted to confessions that he had killed Davidson. The bullet extracted from Davidson's body was the same kind and size as that used in appellant's gun.

Appellant introduced the testimony of several witnesses tending to show that at the time Mrs. Davidson said that the shot was fired he was at another place, considerably distant from the scene of the killing.

Other witnesses were introduced tending to show that appellant had, for a number of years, been weak-minded. The lady with whom appellant roomed in Cotter testified that she had known him for about nine years, and that during recent years his mind had become affected to the extent that he could not converse intelligently or in a connected way, could not hold to the subject which he

was discussing, and that he looked wild out of his eyes, and seemed to be restless.

Other witnesses who knew appellant in Cotter testified to about the same effect as Mrs. King. Other witnesses testified that he could not converse intelligently and that his conversation at times was silly. Others testified that he often spoke about the house being on fire, and sometimes would plead with those in the house to close the door, saying that somebody was coming in. Another witness testified that on a certain occasion he walked down the road with appellant, and that appellant was drinking to some extent, and said he saw a black cat. Witnesses testified that when in the house he would beat the walls and cry out that the house was burning.

Appellant's father testified that, about eight years before the killing, appellant had been thrown from a wagon while driving under the platform of a gin and sustained an injury to his back or spine, and that since that time his mental faculties had been considerably impaired. He stated that appellant could not carry on a connected conversation; that he was nervous and frequently spoke of the house being on fire, and sometimes would ask that the door be shut, saying that, "They are coming in after me."

The testimony showed that appellant drank whiskey to a considerable extent, and that it was generally during his spells of drinking that he showed weakness of mind to a marked extent. There was testimony, however, that this condition of mind extended beyond his periods of intoxication.

It is first contended that the judgment should be reversed for the reason that the special term of the circuit court at which appellant was indicted and convicted was not called in the manner and form prescribed by the statute, in that the order did not contain an affirmative recital that the holding of the special term would not interfere with any other court to be held by the judge of that circuit.

The jurisdictional requirements in calling a special term are, that the person to be tried is confined in jail upon a criminal charge; that the holding of the special term shall not interfere with any other court to be held by the same judge; that the special term shall not be held within twenty days of a regular term of the court, and that the order calling the term of court shall be made out and signed by the judge and entered on the records of the court. Crawford & Moses' Digest, § 2218 *et seq.·*

The decisions of this court on this subject are conclusive of the question of the legality of the order for the special term of the court in this instance against the contention of counsel for appellant. These decisions are reviewed in the recent case of *Pool* v. *State,* 121 Ark. 17, where we held, in substance, that the words of the statute concerning interference with any other court to be held by the same judge (Crawford & Moses' Digest, § 2222) had reference to a regular term, and that, since the court will take judicial knowledge of the time for holding the regular terms of court, it was unnecessary that the order calling a special term should contain a recital on that subject.

We are of the opinion that the order of the court sufficiently complied with the statute in form and substance, and that there are no grounds for declaring the special term of court invalid.

The special term was called for May 22, and the trial was begun on May 25, 1922.

Appellant was arrested immediately after the killing, and was carried to the penitentiary for safekeeping, and was kept there until he was indicted.

Counsel filed a motion for continuance, stating that appellant had for a long time been addicted to the use of intoxicants to the extent that he was suffering from alcoholism and delirium tremens, and that his mental faculties were affected, on that account, to the extent that he was incapable of knowing the difference between right

and wrong, and was unable to control his actions; that he desired the attendance, as witnesses, of two physicians, Doctors Murphy and Kirk, residing in Little Rock; that on account of the short lapse of time between appellant's arrest and the date of the trial, the two physicians mentioned had not had sufficient opportunity to examine him in order to testify concerning his mental condition, and further time was asked to give the physicians an opportunity to examine appellant with reference to his mental condition. Continuance was also asked to enable appellant to procure the attendance of certain witnesses who would testify concerning his weakened condition. The court overruled this motion, and this ruling of the court is pressed upon us as grounds for reversal.

We have often said that the matter of granting or refusing a continuance is one within the discretion of the court, which will not be disturbed unless abuse is shown.

So far as concerns the procurement of the testimony of the physicians, who were wanted to testify in regard to appellant's mental condition, it is sufficient to say that there was no abuse of discretion by the court, for it is not shown that appellant had made any effort to have an examination by the physicians, nor is any reason given why the two physicians could not have examined appellant during the time he was confined in the penitentiary at Little Rock.

All that appellant proposed to prove by the other absent witnesses was appellant's mental condition, the same character of testimony that was adduced at the trial by other witnesses. In other words, appellant sought to procure the same character of testimony which was produced in abundance at the trial, and there was no reason why it was necessary to await the attendance of the absent witnesses when there were plenty of other witnesses who were well acquainted with appellant's mental condition, and who could, and did, testify to the same effect as the absent witnesses would have testified if present.

Our conclusion is that there was no error in overruling the motion for continuance.

The next assignment of error is in regard to the ruling of the court in refusing to sustain appellant's challenge to juror Minor, who stated, in substance, on his examination as to qualification, that he had an opinion, based upon newspaper reports and what a certain person had told him what some of the witnesses would testify, and that it would require testimony to remove this opinion, but that he would decide the case according to the law and the testimony and would not be influenced in his verdict by anything that he had heard. In other words, the statement of the juror was that he had an opinion based upon newspaper reports and hearsay, which could be removed by testimony, and that he would be controlled by the testimony in the case and not by previous reports which he had heard and read. *Gibson* v. *State,* 135 Ark. 520; *West* v. *State,* 150 Ark. 555.

The court gave, among others, the following instructions, to which exceptions were saved:

"No. 7. You are instructed that, if you find beyond a reasonable doubt that defendant committed the crime charged, and as charged in the indictment, the defense of insanity cannot avail the defendant, unless you believe from a preponderance of the evidence that at the time of the killing he was under such defect of reason from disease of the mind as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know that he was doing what was wrong, or if he knew the nature and quality of his act and knew that it was wrong, that he was under such duress of mental wrong, and unable, because of the disease, to resist doing the wrong act which was the result of his mental disease.

"No. 8. And you are instructed that, although you may believe beyond a reasonable doubt that defendant committed the crime charged in the indictment, yet if you believe from a preponderance of the evidence that at the time of the killing he was under such defect of reason

from disease of the mind as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know that what he was doing was wrong, or if he knew the nature and quality of his act and did know that it was wrong, that he was under such duress of mental disease as to be incapable of choosing between right and wrong and unable, because of the disease, to resist doing the wrong act, which was the result solely of his mental disease, then it will be your duty to acquit him.''

The objection urged against these instructions is that they failed to incorporate the principle of law on the subject of insanity as a defense to crime that it is not essential that the accused be incapable of choosing between right and wrong generally and on all subjects other than the act which is the charge on which he is being tried. Counsel cite, in support of their contention, several recent decisions of this court. *Bell* v. *State,* 120 Ark. 530; *Hankins* v. *State,* 133 Ark. 38; *Woodall* v. *State,* 149 Ark. 33.

We do not think that either of the instructions ignored the principle stated by counsel, but that, on the contrary, the language of each of the instructions complained of sufficiently stated the principles of law, including the one referred to by counsel. Each of the instructions states the law to be, in substance, that if the killing occurred while the accused was under such defect of reason from disease of the mind that he did not know the nature and quality of the act that was being done; or, if he did know it, that he did not know that what he was doing was wrong; or, if he knew the nature and quality of the act and did know that it was wrong, that he was under such stress of mental disease as to be incapable of choosing between right and wrong and unable to resist doing the act of which he was accused, he would not be responsible.

In addition, we are of the opinion that the proof in this case did not really call for an instruction pointing out the distinction between the capacity of knowing the

difference between right and wrong generally and with, respect to the particular act under investigation. The reason is that there was no proof in the present case tending to show that appellant labored under any delusion which caused him to commit the act in question. The proof adduced tended merely to show general insanity as manifested by different acts and conduct of appellant from time to time. If there was no delusion which caused appellant to commit the act or that was in any way connected with the commission of the act, then there was no place in the case for an instruction which directed the attention of the jury particularly to the question of the capacity of knowing the difference between right and wrong with reference to a particular act. It was sufficient to state the general principle that if the accused was incapable of choosing between right and wrong, it constituted a defense.

We are of the opinion, therefore, that the court did not err in giving the instructions, nor did it err in refusing to give the one requested by appellant on that subject, which was sufficiently covered by those that the court gave.

The giving of instruction No. 9 is assigned as error, and that instruction reads as follows:

"You are instructed that, if you find from a preponderance of the testimony that the defendant was suffering from organic brain trouble and mental diseases as defined in the foregoing instruction, then, no matter if you should conclude that such condition was produced by alcoholism, for such condition of mind is as much a defense when produced by drink as when produced by any other cause, and if you find that he was suffering from such condition to the extent set forth in said instruction, whether such condition was produced by drink or otherwise, it is your duty to acquit him. The defendant must be suffering from organic brain trouble, or a disease of the mind, and not actuated by hate, anger, or jealousy, or other passion. If, from evil associations and

indulgence in vice, his conscience ceases to control or
influence his actions, and he is otherwise capable of com-
mitting crime, he is responsible.''

The first paragraph of the instruction was given at
the request of appellant, but the court modified the in-
struction by adding the last paragraph, and the objection
is to that paragraph. The contention is that, according
to this instruction, no matter if appellant was suffering
from organic brain trouble and it had progressed to
the extent that appellant could not realize the nature and
quality of his act and did not know that it was wrong,
this would not be a defense if there was an element of
hate, anger, jealousy or other passion entering into the
killing. Such is not, we think, the effect of the instruction,
for, if he was actuated in committing the homicide by
hate, anger, jealousy or other passion, it could not be a
result of a diseased condition of the mind. These differ-
ent states of mind do not exist together, for, if a given
act is committed under stress of a diseased mind, it is
not actuated by the emotions of hate, anger, or jealousy.
This instruction correctly told the jury, in effect, that if
the act was committed as the result of suffering from
organic brain trouble or disease of the mind, this would
constitute a defense, but that it would not be a defense
if the act was prompted by hate, anger, jealousy, or
other passion.

Again, it is contended that the latter part of the
instruction in effect told the jury that if, from evil associ-
ations and indulgence in vice, the accused had ceased to
control or influence his actions, he would be responsible
if otherwise capable of committing the crime, and that
this ignores the element of incapacity of knowing the
nature and quality of the act committed. The language
does not ignore this element, for this instruction follows
others which call attention to these elements of defense,
and refers to these elements by adding, ''if otherwise
capable of committing crime.''

Finally, it is contended that the court erred in giving instruction No. 19, which reads as follows:

"You are instructed that small discrepancies in the testimony as to time and distances may be attributed to inattention or inaccuracies of memory rather than to a wilful or false swearing."

There was only a general objection to this instruction, which was not sufficient to call attention to the particular language thought to be misleading. What the court evidently meant by the instruction was that the jury might reconcile small discrepancies by attributing the same to inattention or inaccuracy of memory, rather than to false swearing. The court did not say that the jury should do so, but that it might do so. If it was thought that the jury might understand the language of this instruction to mean that it was the duty of the jury to so attribute small inaccuracies, the attention of the court should have been called to this particular language, rather than a general objection to the whole instruction.

Upon the whole, we are convinced, after a careful examination of the record, that there was no error committed. The offense committed by appellant was one of peculiar atrocity, and the testimony is abundant to sustain the verdict.

Judgment affirmed.