DOVER v. STATE.

Opinion delivered October 6, 1924.

1. CRIMINAL LAW—WAIVER OF OBJECTION.—Error in not sustaining a demurrer to an indictment will be waived on appeal where no ruling of the trial court was asked or obtained.

2. CRIMINAL LAW—ARREST OF JUDGMENT.—Under the statute providing that a judgment in a criminal case can be arrested only on the ground that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court, every material fact constituting the offense must be alleged in the indictment, but in determining this question the language used will be construed in favor of the validity of the indictment unless such interpretation is contrary to the plain and usual meaning of the words in this indictment.

3. BANKS AND BANKING—SUFFICIENCY OF INDICTMENT FOR RECEIVING DEPOSITS WHILE INSOLVENT.—An indictment of one as director of a certain bank which alleges that at a certain time and place, after having knowledge that this bank was insolvent, he did assent to the reception of a deposit in said bank, is not defective in failing to allege specifically that said bank was in fact a bank or engaged in the banking business.

4. BANKS AND BANKING—RECEIVING DEPOSITS WHILE INSOLVENT—LIABILITY.—Under Crawford & Moses' Dig., § 697, providing that it shall be a crime for any director of any bank, after having knowledge that it is insolvent, to assent to the reception of any deposits, a director of a bank is guilty where, knowing the bank to be insolvent, he assents to the reception of deposits, though he was not personally present in the bank when any particular deposit was made, and did not in any wise advise or consent to the cashier receiving such deposit.

5. BANKS AND BANKING—POWER OF LEGISLATURE TO DEFINE INSOLVENCY.—As the business of banking is affected by a public interest and subject to regulation, the Legislature is authorized to define what will constitute insolvency within the meaning of the act regulating banks.

Appeal f:om Polk Circuit Court; *B. E. Isbell,* Judge; affirmed.

*Norwood & Alley,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J. Mark Dover prosecutes this appeal to reverse a judgment of conviction against him for the

crime of assenting to the reception of a deposit by a bank
of which he was director, after having had knowledge of
the fact that it was insolvent.

The first assignment of error is that the court erred
in not sustaining a demurrer to the indictment. It does
not appear from the record that a ruling of the court on
the demurrer was asked or obtained, and, under the
settled rules of practice of this court, the alleged error
cannot be considered on appeal. *Kiernan* v. *Blackwell,*
27 Ark. 235; *Pratt* v. *Frazier,* 95 Ark. 405; and *Harbottle*
v. *Central Coal & Coke Co.,* 134 Ark. 254. The defendant
did, however, file a motion in arrest of judgment. Under
our statute (Crawford & Moses' Dig., § 3224), a judg-
ment can only be arrested on the ground that the facts
stated in the indictment do not constitute a public
offense within the jurisdiction of the court. Under this
statute every material fact constituting the offense must
be alleged in the indictment; but in determining this
question the language used will be construed in favor
of the validity of the indictment unless such interpreta-
tion is contrary to the plain and usual meaning of the
words of the indictment. *Loudermilk* v. *State,* 110
Ark. 549.

The body of the indictment is as follows: "The
grand jury of Polk County, in the name and by the author-
ity of the State of Arkansas, accuse Mark Dover of the
crime of receiving deposits in an insolvent bank, com-
mitted as follows:

"The said Mark Dover, in the county and State
aforesaid, on the 16th day of October, 1923, being then
and there a director in the Bank of Hatfield, a corpora-
tion, did unlawfully, knowingly and feloniously permit,
connive at and assent to the receipt on deposit in the said
Bank of Hatfield, $40 in gold, silver and paper money, of
the value of $40, from Boyd Coleman, the said Mark
Dover then and there well knowing at the time that said
Bank of Hatfield was insolvent and in a failing condition,
against the peace and dignity of the State of Arkansas."

The indictment charges that Mark Dover, as a director in the Bank of Hatfield, a corporation, did, at a certain time and place, assent to the receipt of a deposit in said bank of $40 from Boyd Coleman, knowing at the time that the bank was insolvent.

The defendant was indicted under § 697 of Crawford & Moses' Digest. The section reads as follows: "It shall be a crime for any president, director, manager, cashier or other officer or employee of any bank, or member of a firm, after having had knowledge of the fact that it is insolvent, or in a failing condition, to assent to the reception of any deposits or the creation of any debts by it. And if any such officer, employee, member of firm or individual shall knowingly receive a deposit or cause a debt to be created, or assent thereto, or in any manner is accessory to such crime, he shall be guilty of a felony, and, upon conviction, shall be punished by imprisonment in the penitentiary for not less than one year."

Thus it will be seen that the language of the indictment contains a statement of the facts constituting the offense under the statute in ordinary and concise words and in such manner as to enable a person of common understanding to know what is intended. But it is insisted that the indictment does not charge that the Bank of Hatfield was in fact a bank or engaged in the banking business. We think that this fact is charged by necessary intendment from the language used in the indictment. The corporation of which the defendant was a director is called the Bank of Hatfield, and it is charged that the defendant assented to receiving a deposit of $40, knowing at the time that the Bank of Hatfield was insolvent. A bank is usually defined to be an association or corporation whose business it is to receive money on deposit, etc. 7 C. J., p. 473. Therefore we think the indictment meets the requirements of the law under a motion in arrest of judgment. See *Wilkins* v. *State*, 121 Ark. 219, and *Collman* v. *State*, 161 Ark. 351.

A reversal of the judgment is also urged because the evidence is not legally sufficient to support the verdict,

and because the court erred in giving certain instructions to the jury. Both of these alleged errors may be disposed of together, for the reason that they are based upon the same state of facts. The facts summarized make it clear that the Bank of Hatfield was a corporation engaged in the banking business in the town of Hatfield, Polk County, Arkansas; that the defendant, Mark Dover, was a director in the bank during the year 1923; that Boyd Coleman deposited $40 in the bank on the 16th day of October, 1923, and that the deposit was accepted by Roy Holder, the cashier of the bank; that the defendant, Mark Dover, was not present in the bank at the time; that the bank was insolvent at the time the deposit was received, and had been for some time prior thereto; that the bank suspended business on October 17, 1923, and the State Bank Commissioner took charge of it, and that several witnesses testified that the defendant had told them, some time before the deposit in question was received, that he knew the bank was insolvent.

It is the contention of counsel for the defendant that the instructions complained of are erroneous, and the facts relied upon for a conviction are insufficient in law, because the defendant did not receive the deposit, was not personally present in the bank when it was made, and did not in any wise advise or consent to the cashier's receiving the particular deposit in question.

We have copied above the section of the statute under which the defendant was indicted and convicted. It provides that it shall be a crime for any director of any bank, after knowledge that it is insolvent, to assent to the reception of any deposit. The purpose of this statute is to protect the depositors in a bank by punishing its officers for assenting to the receiving of deposits when the bank is insolvent. By necessary implication, it makes it the duty of the directors to refrain from receiving deposits or assenting to their receipt when they know that the bank is insolvent. It is the duty of the directors to give personal supervision to the affairs of the bank, and its solvency or insolvency should be a matter peculiarly within their knowledge. On the other hand, depositors

have no means of accurately informing themselves on the subject. It is a matter of common knowledge that bank deposits are made upon a wholly different reliance as to security than in the loan of money. Generally when money is lent, security is expected and demanded. Money is deposited in a bank because of confidence in its solvency and ability to repay because it is a bank. The business of a bank is not confined to the property owned by the bank, but includes and involves all deposits and other property passing through its hands or intrusted to its keeping. While the bank continues in business, it holds out to the public the assurance of its solvency and ability to meet its obligations. To construe the statute as applicable only to the agent of the bank who actually receives the deposit, or connives at the receipt of it, would have the practical effect of nullifying the statute. If the directors, knowing the bank to be insolvent, could make use of the teller to receive the deposit for the bank, and escape civil and criminal liability because they had nothing to do with the actual receipt of the deposit or connived at its receipt, then the statute might as well not have been passed. They could leave the receipt of deposits wholly in the hands of a teller, and, by keeping him in ignorance of the insolvency of the bank, they all could escape responsibility under the statute.

The reasonable construction is that, when the receiving teller of a bank accepts a deposit for it, it is an act performed for the bank on the authority of the directors. Statutes imposing criminal liability on officers of insolvent banks, who receive or assent to the receipt of deposits, have been generally sustained. The reason is that the right to engage in banking may be regulated by legislation, and the business must be carried on in strict accordance with such statutes. This view of similar statutes is sustained by the following authorities: *State* v. *Mitchell*, 96 Miss. 259, 51 So. 4, Ann. Cas. 1912B 309; *State* v. *Eifert* (Iowa), 38 L. R. A. 485; *Baker* v. *State*, 54 Wis. 376; 12 N. W. 12; *Carr* v. *State* (Ala.), 16 So. 150; *State* v. *Caldwell* (Iowa), 44 N. W. 700; *State*

*v. Sattley* (Mo.), 33 S. W. 41; and *McClure* v. *People* (Colo.), 61 Pac. 612. The constitutionality of the statute in question has been upheld by this court in *Collman* v. *State,* 161 Ark. 351 and cases cited.

In the present case it clearly appears that the bank was insolvent at the time the deposit in question was made. Several witnesses testified that the defendant, a short time before the bank closed its doors and before the deposit in question was made, stated to them that he knew that the bank was insolvent. As we have just seen, the mere fact that he was not personally present when the deposit was received by the cashier did not relieve him from responsibility under the statute. The gist of the offense was in the defendant's assenting to the receipt of a deposit, knowing that the bank was then insolvent. If he intended to relieve himself of responsibility under the statute, he should have protested against the receipt of any deposits by the bank after he knew that it was insolvent.

It is true that there is testimony in the record tending to show that a former officer of the bank caused its insolvency, and that the defendant became a director of the bank for the purpose of protecting the interests that he and his business associates had in the bank, and was trying to work out a method of relieving the stockholders of its financial difficulties. These facts, however, did not relieve the defendant from criminal liability under the statute, but such testimony was proper to go to the jury to be considered by it in mitigation of his punishment.

Section 717 of Crawford & Moses' Digest provides that a bank shall be deemed insolvent within the meaning of the act upon the existence of certain stated facts. No objection can be made to the validity of this section of the statute. As we have already seen, the gist of the offense was in receiving the money on deposit, with the knowledge on the part of the defendant that the bank was insolvent, and the proviso of the statute as to what constitutes insolvency is merely a rule of evidence.

There is some conflict in the authorities as to whether the closing of the doors of a bank by a State Bank Commissioner, just after the receipt of a deposit, could be made *prima facie* evidence by the statute not alone of the insolvency of the bank at the time the money was received, but of the knowledge of the officers of the bank of that fact. *State* v. *Buck,* 120 Mo. 479, and cases cited; *Meadowcroft* v. *People* (Ill.), 35 L. R. A. 176, and cases cited; and *People* v. *Cannon,* 139 N. Y. 32. We need not decide this question, however, for it is plain from reading these cases and the opposing authorities that the general power of the Legislature to prescribe rules of evidence and methods of proof is undoubted. All of the authorities agree that, in statutes of this sort, the Legislature might have the power to define what would constitute insolvency under the banking law. The business of a banker is affected by a public interest, and therefore subject to public regulation. As a part of the regulatory act, the Legislature would have the undoubted power to define what would constitute insolvency within the meaning of the act. The definition by statute would inure, not only to the benefit of the general public doing business with banks, but also to the banks themselves.

We find no reversible error in the record, and the judgment will therefore be affirmed.