CRAWFORD *v.* STATE.

Opinion delivered December 21, 1931.

*J. V. Walker*, for appellant.

*Hal L. Norwood,* Attorney General and *Pat Mehaffy,* Assistant, for appellee.

KIRBY, J. Charles E. Crawford prosecutes this appeal from a judgment of conviction upon an indictment charging him with receiving a deposit in the Citizens' Bank of Pettigrew, of which he was president, on the 19th day of December, 1930, when the bank was insolvent and known to be so by him at the time of his acceptance of the deposit.

Appellant urges for reversal that the court erred in giving and refusing certain instructions, in the admission of and refusal to exclude from the jury certain testimony, and the refusal of the court to direct a verdict for him on his motion at the conclusion of the testimony, it being claimed that there was not testimony sufficient to support the verdict.

Appellant complains of instruction number 3, given for the State, and the refusal of the court to give his requested instruction number 1. The statute, § 717, Crawford & Moses' Digest, defines insolvency within the meaning of the banking act, and the instruction complained of is substantially in the language of the statute, the case being tried upon the theory that at the time the bank closed its liabilities exceeded its assets, and it was insolvent within the meaning of the statute defining insolvency, and the contention that the instruction was erroneous cannot be sustained. If some portion of the instruction was abstract as applied to the case, no specific objection was made on that ground, and the instruction requested by appellant on the question of insolvency contained an exact copy of said statute, and was more

abstract than the one given by the court. The instruction given closely follows the language of the statute defining insolvency, and is necessarily a correct declaration of the law, from which doubtless any portion of the instruction which could be considered abstract would have been eliminated upon specific objection made calling attention thereto, and no error was committed in giving this instruction. *Hannah* v. *State,* 183 Ark. 810, 38 S. W. (2d) 1090; *Hunter* v. *State,* 180 Ark. 613, 22 S. W. (2d) 40.

■ An inventory of the bank's affairs was exhibited showing that on December 20, 1930, the date of its closing, its liabilities for deposits amounted to $33,765.55, its capital stock was $10,000, and its surplus $4,000, making a total liability of $47,765.55. Evidence of the appraisal appears at Exhibit Q showing losses on the actual value of the assets to be less than it was figured on the bank's inventory, as follows: loss in bank house, $250; furniture and fixtures, $1,181; cash items, $265.56; loans and discount loss, $12,607.91; the total of these amounts being $14,304.47, which, deducted from the assets of the bank, discloses that the liability for deposits exceeds the assets, and that the bank was insolvent, therefore, within the meaning of the said statute. There were a number of other items for large amounts not included in the losses that could have been, most of them being unsecured and no interest having been paid on them for more than a year. In the examiner's report, a Sullins note for $1,500 was included as a collectable item, upon which no interest had been paid for more than one year, also a note for $2,000 was not included in the loss column, although there was more than one year's interest due on it, and it was unsecured.

Appellant insists that the court erred in permitting the introduction of Exhibit P an appraisal of the assets and liabilities of the bank on the day it closed, in connection with the testimony of witness, Maxey, because the report was not prepared by him. This witness, however, stated that he was special deputy bank commissioner

in charge of the bank when the inventory of its assets was made; that he examined the inventory, and after taking charge of the bank investigated and verified it and found it to be correct. Certainly, the testimony was competent, and, although the witness referred to the inventory as having been prepared by another, he stated that he made an investigation of the bank's condition and affairs after taking charge of it, which disclosed that the inventory was correct, and the witness was therefore in effect testifying about his own knowledge acquired from an investigation and examination of the affairs and books of the bank, which verified the inventory as stated by him to be correct.

Objection is also made that the court erred in allowing the introduction of the testimony of other witnesses, or rather in not excluding such testimony or striking it from the record, about appellant's losses after it was permitted to be introduced without objection. These witnesses were depositors of the bank, and had been working in conjunction with the liquidating agents in making an appraisal of the bank's assets. Their testimony concerning the value of the assets was predicated on information obtained by them with reference to the value of the assets subsequent to the closing of the bank. In proving the value of assets, any competent evidence pertaining thereto should be received as illustrating and bearing upon the worth of the assets as of the time of December 20, 1930, the date the bank closed. 1 Michie, Banks and Banking, page 342; *State* v. *Hightower,* 187 N. C. 300, 121 S. E. 616; *State* v. *Miller,* 131 Kan. 36, 29 Pac. 483.

Some of the testimony of each of the said witnesses was competent, most of it, and, having been introduced without objection, it was within the discretion of the court to refuse to exclude it and withdraw it from the jury. *Martin* v. *State,* 180 Ark. 12, 22 S. W. (2d) 1012.

The testimony of C. D. Chaney, cashier of the bank when it closed, that appellant had actual management of the bank, passed on the loans, as the board of directors did not meet regularly, and also concerning the mass

meeting on December 13th and the resolution of the board of directors to prohibit the withdrawal of more than $5 per day by the depositors, and about the reserve, the overdrafts of appellant, his attempts to procure loans for the bank immediately prior to its closing, and his statements relative to the cash item of a two-year-old check drawn by J. H. Phipps and concerning the indebtedness of Phipps to the bank, were introduced without objection; and, although certain portions of this witness' testimony were objected to, no motion was made to strike any particular part of it out, and the court did not err in allowing it introduced. This testimony was admissible to show the knowledge of the defendant of the condition of the bank and to show the bank's failure to maintain its reserve. *State* v. *Cole,* 161 La. 829, 109 So. 505; 1 Michie, Banks and Banking, page 339.

■ In order to sustain the conviction, the State must not only show that the bank is insolvent, but also that the official receiving the deposit has knowledge of that fact. The proof of such knowledge is frequently by inference from the circumstances, and the official charged with the crime cannot complain of the proof of circumstances which impute to him knowledge of the bank's insolvency, but such proof should be limited to the purpose stated, and the State should not be permitted to prove any facts or circumstances from which the guilt of the accused might be inferred, unless such facts and circumstances also tend to show the bank's insolvency and the official's knowledge of that fact. *Skarda* v. *State,* 118 Ark. 182, 175 S. W. 1190, Ann. Cas. 1916E, 586.

The evidence in the case is voluminous and somewhat conflicting, but it showed that the deposit was received by appellant, the president of the bank, and that the bank at the time was insolvent within the meaning of the statute, and that the appellant was thoroughly familiar with the bank's condition, that he practically operated it, there being no discount board, and he necessarily knew the condition existing at the time the deposit was accepted, and the jury could have inferred such fact from the testimony.

It is true he was frantically urging certain of the debtors of the bank to pay up and trying to get enough money at the time to restore the reserve, although he had not been called on to do so, and may have believed that the bank would be able to weather the storm, but his good intentions and honest belief about being able to get the money to tide the bank over the difficulty does not excuse him from the penalty of the law for accepting a deposit when the bank was insolvent, and he must have known of that fact.

The jury have found, upon sufficient evidence, that his conduct was a violation of the banking act. The record being free from error, the judgment must be affirmed. It is so ordered.