BANKS v. STATE.

Opinion delivered April 4, 1932.

*Joe T. Robinson, Donham & Fulk, T. D. Wynne,* and *Harry Meek,* for appellant.

*H. L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

*James G. Coston* and *J. T. Coston, amici curiae.*

HART, C. J. A. B. Banks was convicted before a jury for receiving or allowing to be received in the American Exchange Trust Company a banking corporation of Little Rock, Arkansas, of which he was president, deposits after he knew that the bank was insolvent. The jury fixed his punishment at imprisonment for one year in the State Penitentiary, and from the judgment upon the verdict the defendant has appealed.

The first assignment of error is that the court erred in refusing to grant the defendant a continuance. The granting or refusing of continuances is within the sound legal discretion of the court, and this court will not interfere where there has been no abuse of that discretion. *Golden* v. *State,* 19 Ark. 590; *Edmonston* v. *State,* 34 Ark. 720; *Jackson* v. *State,* 54 Ark. 243, 15 S. W.

607; *Goddard* v. *State,* 78 Ark. 226, 95 S. W. 476; *Morris* v. *State,* 102 Ark. 573, 145 S. W. 213; *Bruder* v. *State,* 110 Ark. 402, 161 S. W. 1067; *Sease* v. *State,* 155 Ark. 130, 244 S. W. 450; *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d) 946.

While numerous other cases approving the rule have been decided by the court, no useful purpose could be served by citing or reviewing them, because each case depends upon its own particular facts. The indictment in the case at bar was returned on April 27, 1931. On May 27, 1931, the case was set for trial on June 26, 1931. The trial lasted about one week. Numerous witnesses were introduced by the State and by the defendant. Eminent counsel represented the defendant. They were allowed to introduce testimony relative to every phase of the case. There was ample time to have taken the deposition of any witness which might have been desired. There was no reversible error in the action of the court in overruling the defendant's motion for a continuance.

■ The next assignment of error is that the court erred in overruling the defendant's motion to quash the indictment. The record shows that the grand jury duly returned into court the indictment upon which the defendant was tried. Thereafter, on another day of the same term, after obtaining permission of the court, the same grand jury met and heard the testimony of the defendant, A. B. Banks. Thereupon, the grand jury made a written report to the court, stating that it had erred in returning the indictment, and recommended to the prosecuting attorney that a *nolle prosequi* be entered of record. The prosecuting attorney objected, and the court refused to quash the indictment.

There was no error in this ruling of the court. Under our Constitution and laws, a grand jury is an accusing body, and, while an appendage or part of the court, it has no powers as a judicial tribunal. When it returns into court a true bill in a case, its power in the premises is ended until and unless, under orders of the court, the charge is again submitted to it for consideration. The indictment and return thereon of a true bill is a public

record of which the court has exclusive jurisdiction. It cannot be withdrawn from the files of the court and changed by the grand jury. Then, too, when the grand jury returns a bill into court and files it, the court acquires jurisdiction of the case, and the function and power of the grand jury is ended. *Fields* v. *State,* 121 Ala. 16, 25 So. 726; *Gibson* v. *State,* 162 Ga. 504, 134 S. E. 326; Joyce on Indictments (2d ed.), § 128, p. 153; 31 C. J. 587.

■ The next contention relied upon for reversal of the judgment is that under § 717 of Crawford & Moses' Digest, which is a part of our statute regulating banks and banking, the bank in question was not insolvent because there had been no examination made by the bank examiner. Reliance is placed upon that part of the section which provides that a bank shall be deemed insolvent within the meaning of the act upon the existence of the following facts: * * * ''3. If, upon examination, it is ascertained that the liabilities of a bank exceed its assets.''

It is claimed that under this section it is only the Bank Commissioner who can declare a bank insolvent after examination made, and that, so long as the Bank Commissioner permitted the bank to remain open, it was not insolvent. We do not think so. Our banking act (§ 712, Crawford & Moses' Digest) allows the officers of a bank to close it for insolvency, and § 697 of Crawford & Moses' Digest makes it a felony for any officer to receive or allow to be received deposits in the bank when he knows it to be insolvent. We cannot conclude, in the light of these sections, that it was the intent of the banking act to vest in the Bank Commissioner alone the power to determine when and when not a bank is insolvent. *Raynor* v. *Scandanavian-American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716.

■ The next assignment of error is that the court erred in allowing the testimony of W. A. Hicks and Sam Wilson to go before the jury. According to the testimony of W. A. Hicks, he was president of the People's Trust Company of Little Rock, and had been since De-

cember 1, 1928. Prior to that time he was active vice-president of the American Southern Trust Company, which was taken over by the American Exchange Trust Company. He was familiar with the ability of the customers of the latter bank to pay their obligations. After the American Exchange Trust Company closed its doors, on account of insolvency on November 17, 1930, witness was one of a committee of three bankers selected to investigate the assets of the insolvent bank. Witness was allowed to make a detailed statement of the large debtors of the bank and to state the value of the securities deposited by them in the bank for the purpose of securing the loans made to them. Among the largest debtors were Caldwell & Company, insurance investment brokers of the State of Tennessee; A. B. Banks & Company, investment brokers, owned and controlled principally by the defendant; Van M. Howell & Co., another investment concern owned and controlled principally by the defendant. Other large debtors of the bank were listed by the witness, Hicks, and his opinion given and taken as to the value of their securities. Without going into detail in the premises, it is sufficient to say that his testimony tended to show that the bank was insolvent on November 15, 1930, and when it failed to open on November 17, 1930.

Sam Wilson was a planter and merchant and a director of a bank in the southern part of the State. He was appointed as liquidating agent for the American Exchange Trust Company when it was taken charge of by the State Bank Commissioner. He made a list of the large debtors of the bank, and his testimony tended to corroborate that of W. A. Hicks as to the value of their securities and in other matters.

We are of the opinion that the testimony was admissible under the principles of law heretofore decided by this court in similar cases. *Cunningham* v. *State,* 115 Ark. 392, 171 S. W. 885; *Skarda* v. *State,* 118 Ark. 176, 175 S. W. 1190, Ann. Cas. 1916 E, 586; *Wilkin* v. *State,* 121 Ark. 219, 265 S. W. 76; *Dover* v. *State,* 165 Ark. 496, 265 S.

W. 76; *Crawford* v. *State,* 184 Ark. 1027, 44 S. W. (2d) 360. The reason is that the business of banking, while a lawful one, is subject to regulation under the police power of the State. Money is the life blood of the nation, and a country's financial system has been generally regarded as the Scylla and Charybdis upon which it is wrecked or voyages to safety. The banking business, from the beginning of our country's existence, has grown to be a part and parcel of a great financial system, and the bulk of the business is transacted through the medium of bank checks and drafts. It is the great business of the country which needs protection, but which needs to be regulated to promote the general public welfare and happiness of the people. A bank does business upon the confidence of the people in its solvency. When the public ceases to have confidence, suspension of business is near. So it can be said that, when a bank is open and doing business with the public, that of itself is in effect a public declaration of solvency. Therefore, if its officers allow deposits to be received when they know the bank to be insolvent, such act is punishable as a criminal offense. The mere fact that, after investigation had been begun, the officers of the bank in question continued to do business, tended to show knowledge of its insolvency on the part of the officers. For an insolvent bank to continue in business is to hold itself out as having responsibility and surplus capital when none exists. To suppress this real or supposed mischief, our Legislature has passed the act under which the defendant was convicted in the present case. It is a matter of common knowledge that the deposits of the banks of the country exceed many times the amount of the actual money in the country. This is so because a large part of the business is transacted by checks and drafts. Hence the solvency or insolvency of banks must of necessity rest upon the value of their securities rather than upon the amount of money on hand. These principles of law have been recognized by well-known textwriters and many adjudicated cases. No particular citation of authority is needed therefore to support it.

If the solvency or insolvency of the bank in question could not be proved by those who have made an examination of the affairs of the bank immediately before or after its officers have closed its doors on account of insolvency, then the statute in the present case might well never have been passed, as it would be practically impossible to convict under it. The deposit in the present case was received on Saturday, November 15, 1931, in the usual course of business, and the bank closed its doors on the following Monday, and has been in the hands of the Bank Commissioner for liquidation as an insolvent bank ever since. A bank is insolvent, within the meaning of the statute, when its assets and property are of such a character and value that it is unable to meet its demands in the usual and ordinary course of business. It is not essential that the bank shall have on hand sufficient cash to pay all of its depositors, or any considerable number of them, on the same day. It is necessary, however, for it to have on hand cash or other available assets to meet the demands that are usually made on it from day to day in the ordinary course of business. *Skarda* v. *State,* 118 Ark. 176, 175 S. W. 1190, Ann. Cas. 1916 E, 586; *Wilkin* v. *State,* 121 Ark. 219, 180 S. W. 512; *Crawford* v. *State,* 184 Ark. 1027, 44 S. W. (2d) 360.

While the defendant introduced testimony tending to show that the bank was not insolvent when the deposit in question was received, we do not deem it necessary to set it out or to comment upon it; for the verdict of the jury must be tested by the evidence on behalf of the State. The testimony of Hicks and Wilson was sufficient to warrant the jury in finding that the bank was insolvent on November 15, 1930, when the deposit in question was received in the usual course of business.

■ The only other matter which need be considered in testing the legal sufficiency of the evidence upon a verdict of guilty is whether or not the defendant knew of the insolvency of the bank at the time the deposit was received. Here again we find the testimony in conflict, but a careful consideration of the evidence for the State,

viewed in the light of the attendant circumstances, warranted the jury in finding that the defendant had such knowledge. In order to find the defendant guilty, it was not necessary to impute to him any fraudulent intent in the conduct of the affairs of the bank; it was only necessary to find that he had knowledge of its insolvency at the time the deposit in question was received.

The record shows that the American Exchange Trust Company was organized in February, 1930, by a merger of the American Southern Trust Company and the Exchange National Bank, both banking corporations in the city of Little Rock. A new bank was formed with a capital of $1,000,000 and a surplus of $500,000. The defendant was president of the American Southern Trust Company and became the president of the newly organized bank, and a member of its board of directors. While he was not chairman of the board, the defendant was usually present at its monthly meetings and presided at such meetings. Prior to this time, commencing in the year 1900, the defendant organized various insurance companies for the purpose of conducting a fire, accident and life insurance business. These companies acquired considerable capital, which was invested by them in banks over the State. At the time the American Exchange Trust Company became insolvent, it was affiliated with about 48 other banks in the State. The defendant controlled all these banks as well as the insurance companies referred to above. He also conducted the negotiations for the purchase of the assets of some of his insurance companies by Caldwell & Company, of Nashville, Tennessee. The record shows that he kept in close touch with all of these companies; he knew their interlocking relations with each other; he knew that the insurance companies had invested largely in stocks in the various banks under his control; he was the guiding star and the principal owner of two investment companies which turned out to be wholly insolvent, and which were organized for the purpose of investing in stocks and bonds. Both these companies were indebted to the American Exchange

Trust Company in large sums at the time it closed its doors.

This is not a case where the defendant was ignorant of the banking business and could not have known of the bank's insolvency, had he made an examination of its affairs, nor is it a case where he paid no attention to the business, and did not on that account know its true condition. He did not have to depend upon statements made by the officers of the bank in active charge of its affairs with regard to its financial status. It is not a case where the bank became insolvent because of an earthquake or some sudden and unexpected casualty. It may be true that the defendant relied upon other officers of the bank more or less for detailed information with regard to its financial condition, but he knew the connection of the bank with the various other forty-eight banking institutions in the State; he knew in a general way of their condition; he knew of the condition of the various insurance companies with which he was connected, and all the way through had active management and control of these institutions. He knew of the failing confidence of the public in the bank on account of his sale of assets to Caldwell & Company, and must have known in a general way that the bank was gradually becoming insolvent; he knew beforehand that his bank was being investigated by the Clearing House Association of Little Rock.

It is claimed for the defendant that, from time to time, he put large resources of his own in the bank for the purpose of protecting its depositors and preventing the bank from becoming insolvent. This was proper testimony to be considered by the jury, and doubtless was so considered in fixing his punishment. Under our statute, the guilt or innocence of the defendant in cases of this sort does not depend upon a fraudulent intent. The gist of the offense is that he allowed deposits to be made, knowing that the bank was insolvent. The very fact that from time to time he put large amounts of money and securities of his own into the bank to protect the bank indicated a knowledge on his part that he knew that the

548

bank was in failing condition. At least the jury might have so found.

We have carefully considered all of the testimony in the record and are of the opinion that, if believed by the jury, the testimony on behalf of the State warranted the verdict of guilty. The judgment of the trial court is therefore correct, and it is affirmed.

McHANEY, J., disqualified and not participating.